UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
--------------------------------------------------------------x
                                          :
YEHUDA KATZ,                              :
Individually and on behalf of a class,    :        Case No. 12 Civ. 4173 (ENV)(RER)
                                          :
                        Plaintiff,        :
                                          :
            -against-                     :
                                          :
ABP CORPORATION and DOES 1-10,            :
                                          :
                        Defendant.        :
--------------------------------------------------------------x
```

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR (1) CONDITIONAL CLASS CERTIFICATION; (2) APPOINTMENT OF CLASS
REPRESENTATIVE; (3) APPOINTMENT OF CLASS COUNSEL; (4) PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE TO CLASS; AND (5)
SETTING OF FINAL APPROVAL HEARING**

Respectfully Submitted,

SPENCER FANE BRITT & BROWNE LLP          Herzfeld & Rubin, P.C.
Joshua C. Dickinson (admitted *pro hac vice*)   Robert L. Lash
Bryant T. Lamer (admitted *pro hac vice*)       125 Broad Street
1000 Walnut Street, Suite 1400           New York, NY 10004
Kansas City, MO 64105                    212-471-8500
816-474-8100                             rlash@herzfeld-rubin.com
jdickinson@spencerfane.com
blamer@spencerfane.com

THE LAW OFFICES OF SHIMSHON WEXLER, P.C.
Shimshon Wexler
216 W. 104th Street, # 129
New York, NY  10025
212-760-2400
shimshonwexler@yahoo.com

*Attorneys for Plaintiff Yehuda Katz*

# **TABLE OF CONTENT**

**Page(s)**

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ....................................................................................... iii

BACKGROUND ........................................................................................................... 1

ARGUMENT AND AUTHORITIES ........................................................................... 3

I.      THE STANDARD FOR CLASS CERTIFICATION IS MET ................................ 5

      A.      The Requirements of Rule 23(a) Are Satisfied ...................................... 5

             1.      The Class is Numerous .............................................................. 6

             2.      The Commonality Requirement is Satisfied ............................. 7

             3.      Plaintiff's claims are "typical." ............................................... 7

             4.      Plaintiff Will Fairly and Adequately Protect the Interests of the Class ......................................................................................... 8

      B.      The Requirements of Rule 23(b)(3) Are Satisfied ................................. 9

             1.      Common Questions of Law and Fact Predominate. ................. 9

             2.      A Class Action is Superior to Other Means of Adjudication .... 11

II.     CLASS COUNSEL SHOULD BE APPOINTED. ............................................. 12

III.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED. ....................................................................................................... 13

IV.    THE CLASS NOTICE PLAN IS APPROPRIATE ............................................ 22

V.     ESTABLISHMENT OF A FINAL APPROVAL HEARING ........................... 24

I.      THE STANDARD FOR CLASS CERTIFICATION IS MET ................................ 5

      A.      The Requirements of Rule 23(a) Are Satisfied ...................................... 5

             1.      The Class is Numerous .............................................................. 6

             2.      The Commonality Requirement is Satisfied ............................. 7

             3.      Plaintiff's claims are "typical." ............................................... 7

             4.      Plaintiff Will Fairly and Adequately Protect the Interests of the Class ......................................................................................... 8

      B.      The Requirements of Rule 23(b)(3) Are Satisfied ................................. 9

             1.      Common Questions of Law and Fact Predominate. ................. 9

             2.      A Class Action is Superior to Other Means of Adjudication .... 11

II.     CLASS COUNSEL SHOULD BE APPOINTED. ............................................. 12

OP 623620.4

III.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
        APPROVED. ............................................................................................................13

IV.     THE CLASS NOTICE PLAN IS APPROPRIATE............................................................22

V.      ESTABLISHMENT OF A FINAL APPROVAL HEARING..........................................24

CONCLUSION.................................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aliano v. Joe Caputo and Sons-Alogonquin, Inc.*,
No. 9-C-910, 2011 WL 1706061 (N.D. Ill. May 5, 2011)........................................19

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (2007).............................................................................................11

*Bakalar v. Vavra*,
237 F.R.D. 59 (S.D.N.Y.2006) ...............................................................................5

*Beringer v. Standard Parking Corp.*,
Nos. 07-C-5027, 07-C-5119, 2008 WL 4390626 (N.D. Ill. 2008) .............................18, 20, 21

*Boyd v. Interstate Brands Corp.*,
256 F.R.D. 340 (E.D.N.Y. 2009) ..........................................................................5, 6

*Cowley v. Burger King Corp.*,
No. 07–21772, 2008 WL 8910653 (S.D. Fla. 2008)................................................19

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).....................................................................................4

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir.1974)...................................................................................13

*Diaz v. Residential Credit Solutions*,
No. 12-CV-3781 (ADS)(ETB), 2014 WL 279473 (E.D.N.Y. January 23,
2014) ...............................................................................................................11

*Gardner v. Appleton Baseball Club, Inc.*,
No. 09–C–705, 2010 WL 1368663 (E.D.Wis. 2010) .........................................19, 20

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir.2000).....................................................................................13

*Hammer v. JP's Southwestern Foods, L.L.C.*,
267 F.R.D. 284 (W.D. Mo. 2010) .........................................................................18

*Hanlon v. Aramark Sports, LLC*,
No. 09-465, 2010 WL 374765 ..............................................................................21

i

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
    818 F.2d 145 (2d Cir. 1987)......................................................................................21

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y.1992) ............................................................................25

*In re Holocaust Victims Asset Litig.*,
    105 F.Supp.2d 139 (E.D.N.Y. 2000) .................................................................12, 13

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ..................................................................... passim

*In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)......................................4

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000)....................................................................................12

*Kalish v. Karp & Kalamotousakis, LLP*,
    246 F.R.D. 461 (S.D.N.Y. 2007) ...........................................................................11

*Kelen v. World Fin. Network Nat'l Bank*,
    295 F.R.D. 87 (S.D.N.Y 2013) ..............................................................................11

*Long v. Tommy Hilfiger U.S.A., Inc.*,
    671 F.3d 371 (3d Cir. 2012)....................................................................................19

*Matthews v. United Retail, Inc.*,
    248 F.R.D. 210 (N.D. Ill. 2008).............................................................................18

*Najarian v. Charlotte Russe, Inc.*,
    No. CV 07-00501 RGK, 2007 U.S. Dist. LEXIS 59879 (C.D.Cal. June 12,
    2007) .......................................................................................................................18

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) ...........................................................................12

*Reynoso v. South County Concepts*,
    No. SACV07-373-JVS, 2007 WL 4592119 (C.D. Cal. 2007)................................18

*Rosenthal v. Longchamp Coral Gables LLC*,
    603 F.Supp.2d 1359 (S.D. Fla. 2009) ....................................................................20

*State of W. Va. V. Chas. Pfizer & Co.*,
    440 F.2d 1079 (2d Cir. 1971)..................................................................................21

*Stinson v. N.Y.C*,
    282 F.R.D. 360 (S.D.N.Y. 2012) ...........................................................................10

*Torres v. Gristede's Operating Corp.,* No. 04-CV-3316 (PAC), 2010 WL
    2572937, at *2 (S.D.N.Y. Jun. 1, 2010)................................................................*4*

*Troy v. Red Lantern Inn, Inc.*,
    No. 07-C-2418, 2007 WL 4293014 (N.D. Ill. 2007) ..............................................18

*Van Straaten v. Shell Oil Products Co. LLC*,
    678 F.3d 486 (7th Cir. 2012) .................................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).......................................................................................3

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)......................................................................................3

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143 (ENV)(RER), 2010 U.S. Dist. LEXIS 139137 (E.D.N.Y.
    Nov. 12, 2010) ........................................................................................................*4*

**Federal Statutes**

15 U.S.C. § 1681c(g) .............................................................................................1, 7

15 U.S.C. § 1681n.........................................................................................2, 19, 20

15 U.S.C.A. § 1681 .....................................................................................................19

15 U.S.C.A. § 1681o....................................................................................................20

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA")....................................1

FCRA .........................................................................................................................19

**Other Authorities**

23(c)(2). The Due Process Clause of the United States Constitution ...........................21

F<small>ED</small>. R. C<small>IV</small>. P. 23(a)(1)...........................................................................................5

F<small>ED</small>. R. C<small>IV</small>. P. 23(a)(4)........................................................................................8, 9

F<small>ED</small>. R. C<small>IV</small>. P. 23(a) and 23(b)(3) ..........................................................................5

F<small>ED</small>. R. C<small>IV</small>. P. 23(e)(2)......................................................................................3, 23

F<small>ED</small>. R. C<small>IV</small>. P. 23(g) ..........................................................................................12

Federal Rule of Civil Procedure 23(c)(2) ..................................................................21

Newberg, *Class Actions* § 11.41 ..............................................................................25

Robin Sidel, *Identity Theft – Unplugged Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way*, WALL ST. J., Oct. 5, 2006 ...............1

U.S. Const., Amend. V. ..............................................................................................21

*USA Today* ................................................................................................................22

iv

Plaintiff Yehuda Katz ("Plaintiff"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, hereby respectfully submits this Memorandum of Law in Support of its Unopposed Motion for conditional certification the Settlement Class, appointment of Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel, preliminarily approval of the proposed Settlement, approval of notice to the Class, and setting a Final Approval Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003, the Fair and Accurate Credit Transactions Act ("FACTA") was signed into law. The purpose of FACTA, an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), is to protect consumers from the devastating effects of identity theft and credit card and debit card fraud. The U.S. Department of Justice estimates that over 16 million people each year have their identity assumed by criminals for financial gain, causing annual losses of nearly $25 billion. *See* www.bjs.gov/content/pub/pdf/vit12.pdf. One common *modus operandi* of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions. This *modus operandi* is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel, *Identity Theft – Unplugged Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way*, WALL ST. J., Oct. 5, 2006, at B1.

To thwart this pervasive technique and its devastating effects, FACTA provides that:

[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

15 U.S.C. § 1681c(g). Each of these "truncation" requirements provides a crucial barrier between an individual's financial identity and a would-be identity thief's predatory efforts to steal private financial information. Accordingly, to incentivize compliance with this important

provision, the statute subjects willful violators of the Act to damage awards in an amount between $100 and $1,000 per violation.  15 U.S.C. § 1681n.

On August 5, 2012, Plaintiff made a purchase totaling $22.11 at an Au Bon Pain retail location using his credit card, and was provided the customer copy of his receipt.  That receipt displayed 8 digits of Plaintiff's credit card number, as well as the card's expiration date.  A copy of that receipt is attached as Exhibit A to the Declaration of Robert L. Lash, dated April 3, 2014 ("Lash Decl.").

On August 20, 2012, Plaintiff filed his Class Action Complaint against Defendant ABP Corporation ("ABP"), which owns and operates Au Bon Pain retail locations in the United States, and filed an amended complaint on December 13, 2012.  *See* Doc. Nos. 1 and 12. Plaintiff alleges that ABP willfully violated FACTA by failing to properly truncate the display of credit and debit card numbers and expiration dates on electronically printed receipts provided to their customers.  He further asserts that ABP's non-compliance was willful and seeks statutory damages, punitive damages and attorneys' fees on his behalf, and for the members of the proposed Class.  On February 12, 2013, ABP filed a motion to dismiss the amended complaint, which the court denied by Memorandum and Order dated June 4, 2013.  *See* Doc. No. 27.

ABP filed an Answer on July 5, 2013 denying it had engaged in any unlawful conduct. *See* Doc. No. 30.  Beginning on October 7, 2013, the Parties mediated the dispute before Roger M. Deitz, Esq., a leading, accredited mediator in New York City, who has successfully mediated over 1,500 disputes, including many complex commercial, consumer, and class actions.  In connection with the mediation, the Parties shared substantial discovery and worked toward settlement.  For example, ABP provided information regarding the number of individuals in the proposed Class, the number of credit/debit card transactions during the Class Period, the number

of stores impacted by the disclosure of the credit card information, the reason for the disclosure, the length of the time the disclosure occurred, and the parameters for disclosure of the information.  Further, through the mediator, the parties engaged in discussions concerning the strength of the claims and defenses, as well as significant discussions concerning the applicability of caselaw and the potential impact it could have on each party's position.   In addition, the parties discussed the potential impact a judgment would have upon ABP.

As a result of significant pre-mediation discovery and arms-length negotiations during mediation and thereafter, the parties reached a settlement that will provide class members with the choice of obtaining a cash payment of $9.60 or a $15.00 transferable voucher that can be used at any retail location owned and operated by ABP in the United States (a "Retail Location").  Plaintiff now seeks the Court's preliminary approval of a class action Agreement of Settlement (the "Settlement"), which is attached as Exhibit B to the Lash Decl., resolving all claims against ABP in this action and subject to final Court approval.

## ARGUMENT AND AUTHORITIES

The settlement approval procedure provided for by the Settlement Agreement has three distinct steps:

1.    Submission of the Settlement to the Court for preliminary approval;
2.    Providing notice to the Settlement Class; and
3.    A final approval hearing.

The Court must review a proposed class action settlement to determine whether it is "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2). The fairness of a settlement is determined by looking at both the negotiating process by which it was achieved and the settlement's terms— that is, procedural and substantive fairness. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Courts evaluate class action settlements with the general policy favoring the settlement of litigation in mind. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.

1982).  Nonetheless, reviewing courts must exercise careful scrutiny to ensure that the requirements of Rule 23 have been met and that the settlement is not a product of collusion. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

With this Motion, Plaintiff requests that the Court take the first step in the settlement approval process and preliminarily approve the Settlement.  "To grant preliminary approval, the court need only find that there is probable cause to submit the settlement to class members and hold a full-scale hearing as to its fairness."   *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2010 U.S. Dist. LEXIS 139137, at *7 (E.D.N.Y. Nov. 12, 2010) (citing *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)) (internal quotes omitted).  "If, after a preliminary evaluation of the proposed settlement, the court finds that it 'appears to fall within the range of possible approval,' the court should order that the class members receive notice of the settlement."   *Id.* (quoting *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316 (PAC), 2010 WL 2572937, at *2 (S.D.N.Y. Jun. 1, 2010); *Herbert B. Newberg & Alba Conte*, Newberg on Class Actions, § 11.25 (4th ed. 2002)).

Plaintiff, thus, requests that the Court certify the Settlement Class for purposes of obtaining approval of the Settlement and providing notice, and appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel.  Plaintiff further requests that this Court set this case for a final approval hearing.  For the purpose of settlement only, Defendant does not oppose Plaintiff's Motion.  A Proposed Order Granting Preliminary Approval is attached as Exhibit C to the Lash Decl.[1]

---

[1] A Proposed Order Granting Final Approval of the Class Settlement is attached as Exhibit D to the Lash Decl.

4

## I.   THE STANDARD FOR CLASS CERTIFICATION IS MET.

Plaintiff respectfully asks this Court to grant class certification under FED. R. CIV. P. 23(a) and 23(b)(3) on behalf of the following class:

> All persons who used a debit or credit card, including without limitation a Visa, MasterCard, Discover, or Diner's Club debit or credit card or American Express credit card, at any of Au Bon Pain's Retail Locations where the person was provided an electronically printed receipt at the point of sale or transaction that displayed the expiration date of that person's credit or debit card and/or more than five digits of that person's credit or debit card number during the period beginning August 1, 2011 through August 31, 2012.

To be certified, a putative class must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b). *See In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 84 (S.D.N.Y. 2007).   In addition to the analysis under Rules 23(a) and (b), a court must determine whether the plaintiffs have shown, pursuant to the "implicit requirements" of Rule 23, that the class is ascertainable and that the representative plaintiffs are members of that class. *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y.2006).   This Court should certify the Class because all implicit and explicit requirements of Rule 23 are satisfied in this case.  *See*  FED. R. CIV. P. 23.

### A.   The Requirements of Rule 23(a) Are Satisfied.

Pursuant to Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

FED. R. CIV. P. 23(a).  Each of these requirements is satisfied.

### 1.     The Class is Numerous

The class must be so numerous that joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1). But impracticable does not mean impossible. *See Boyd v. Interstate Brands Corp.*, 256 F.R.D. 340, 357 (E.D.N.Y. 2009). When it assesses the practicality of joinder, "the court should take several factors into account, including 'judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.'" *Id.* at 357 (quoting *Robidoux v. Celani*, 987 F.2d 931, 935-36 (2d Cir. 1993)). But if the putative class contains forty or more members then numerosity is presumed. *Id.*

In this case, numerosity of the Class is established because between August 1, 2011 and August 31, 2012 (the "Class Period"), Defendant issued approximately 308,000 credit or debit card receipts that did not comply with FACTA's truncation requirements to approximately 268,000 potential Class Members, including Plaintiff. *See* Lash Decl., Ex. B, at ¶ II(1). Thus, the number of class members is far beyond the number deemed sufficient in other cases. *See In re IPO Sec. Litig.*, 243 F.R.D. at 90 (approving class that was estimated to contain hundreds if not thousands of people); *Boyd*, 256 F.R.D. at 357 (numerosity presumed with forty or more class members). It would not be practicable to join all the Class Members in this litigation. Further, thousands, or hundreds of thousands, of separate trials would be wasteful when each case turns on the same evidence – a nonconforming receipt and Defendant's culpability in providing it. Accordingly, the numerosity requirement of Rule 23(a) is met.

### 2.      The Commonality Requirement is Satisfied.

If common issues of fact or law affect all class members then the class satisfies the commonality requirement. *See In re IPO Sec. Litig.*, 243 F.R.D. at 84. "A single common question may be sufficient to satisfy the commonality requirement. 'The critical inquiry is whether the common questions are at the core of the cause of action alleged.'" *Id.* at 84 – 85 (citing *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996)).

In this case, Plaintiff and the Class share nearly identical questions of law and fact, including whether: 1) Defendant had a practice during the Class Period of providing printed sales receipts displaying more than five digits of the credit/debit card number and/or the expiration date of the debit or credit card; 2) Defendant provided such receipts to Plaintiff and the members of the Class; 3) Defendant's conduct violated FACTA; 4) Defendant's conduct was willful; 5) Plaintiff and members of the Class are entitled to statutory damages, punitive damages, costs, and/or attorneys' fees for Defendant's conduct; and 6) whether any defenses apply. Accordingly, the commonality requirement is satisfied.

### 3.      Plaintiff's claims are "typical."

"A named plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability. 'The rule is satisfied . . . if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members.'" *Id.* at 85 (quoting *Marisol A. v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997)).

Here, Plaintiff made a purchase at one of Defendant's Retail Locations during the Class Period using his credit card and was provided a receipt that displayed 8 digits and the expiration

date of his card.  Through discovery, Plaintiff has established that only purchases at Defendant's Retail Locations totaling $15.00 or more during the Class Period, such as the purchase made by Plaintiff, contained more than 5 digits and the expiration date of his card.[2]  *See* Declaration of Meaghan O'Brien, Assistant Controller of ABP Corporation, dated April 2, 2014, ¶ 4.

Plaintiff's claims against Defendant in this matter are identical to those of the Class. Plaintiff alleges that Defendant violated FACTA by providing him, and each member of the proposed Class, with a transaction receipt containing more than the last five digits and/or the expiration date of the credit or debit card during the Class Period.  Further, Plaintiff seeks exactly the same statutory damages that each member of the Class would likewise seek.  Each class member's basis for recovery and Defendant's potential defenses are premised on the same legal theories and conduct.  Accordingly, Plaintiff's claims are typical of every Class member.

### 4.   Plaintiff Will Fairly and Adequately Protect the Interests of the Class.

A putative class representative must "fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  "Representation is adequate if: (1) there is no conflict of interest between the plaintiffs and the other class members; and (2) plaintiffs' attorneys are qualified, experienced and capable." *Id.* (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp*, 222 F.3d 52, 60 (2d Cir. 2000)).

Plaintiff satisfies both prongs of this requirement.  As discussed above, Plaintiff's claims are identical with other members of the Class.  Because Plaintiff's claims are identical to the Class, and he has no other interest in the case, there is no potential for conflicting interests in this case.   Additionally, Plaintiff has and will capably fulfill the duties required of a Class Representative.   Plaintiff made himself available throughout the entire litigation, including

---

[2] FACTA's truncation requirements are violated if more than 5 credit or debit card digits and/or the expiration date of the card is displayed on the receipt provided to the customer. 15 U.S.C. § 1681c(g). Thus, the amount of digits in excess of 5 that are displayed on the receipt it is of no significance.

availability for discovery and the mediation.   Moreover, Plaintiff retained qualified and experienced attorneys who are competent in class action litigation, and FACTA class action litigation in particular.  The qualifications of counsel are attached as Exhibit E to the Lash Decl., and demonstrate their applicable experience.  Accordingly, because Plaintiff and his counsel will adequately and effectively represent and promote the interests of the Class, the requirements of Rule 23(a)(4) are satisfied.  For these reasons, Plaintiff Yehuda Katz asks the Court to appoint him as a representative of the Settlement Class.

### B.      The Requirements of Rule 23(b)(3) Are Satisfied.

In addition to Rule 23(a)'s class certification requirements, a proposed class must satisfy one of the three alternative requirements of Rule 23(b).   FED. R. CIV. P. 23(b).  Plaintiff seeks certification pursuant to Rule 23(b)(3), which authorizes certification when:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23(b)(3).  Both conditions of Rule 23(b)(3) are satisfied in this case.

### 1.      Common Questions of Law and Fact Predominate.

"'In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof.'" *See In re IPO Sec. Litig.*, 243 F.R.D. at 86 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)).  "'The 23(b)(3) predominance requirement is 'more stringent' and 'far more demanding than' the commonality requirement of Rule 23(a)." *Id.* (quoting *Maneely v. City of Newburgh*, 208 F.R.D. 69, 76 (S.D.N.Y. 2002)).  "Nonetheless, the Supreme Court has noted that the predominance

requirement is 'readily met in certain cases alleging consumer or securities fraud. . .'" *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (2007)).

The predominance requirement can be satisfied by alleging that defendant engaged in a systematized unlawful practice that gives rise to common questions of law and fact. For example, the predominance requirement was met when a class of individuals alleged that the New York Police Department ("NYPD") infringed their constitutional rights by maintaining a policy which required officers to issue summonses without probable cause in order to meet internal quotas. *See Stinson v. N.Y.C*, 282 F.R.D. 360, 382-83 (S.D.N.Y. 2012). "In the present case, common questions of fact and law apply to the claims of each potential plaintiff, including whether Defendants engaged in a pattern and practice of issuing summonses in the absence of probable cause, whether that practice has been motivated by a quota, whether that practice has been perpetuated by inadequate training and whether potential plaintiffs' constitutional rights have been infringed upon as a result of the NYPD's alleged summonsing practices." *Id.* at 382.

The Plaintiff in this case, like the plaintiffs in *Stinson*, has alleged that Defendant engaged in a systematized unlawful practice that gives rise to common questions of law and fact. Specifically, the common issues are: (1) whether Defendant provided improperly truncated sale receipts, (2) whether this conduct violates FACTA, and (3) whether Defendant's conduct was willful. The evidence necessary to answer these questions is standardized and would require establishing that it was Defendant's practice to provide such receipts during the Class Period and Defendant's state of mind in doing so. Likewise, any defenses raised by Defendant would be applicable to all Class members as well. Therefore, the predominance requirement should be satisfied.

**2.      A Class Action is Superior to Other Means of Adjudication.**

Rule 23(b)(3) requires that class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  Four factors are relevant to this analysis:

> (A)      the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)      the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)      the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)      the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).  These factors strongly weigh in favor of class certification.

The members of the Class will have little interest in controlling the prosecution of separate actions. First, many members of the Class are most likely unaware that Defendant's conduct placed them at greater risk of a privacy violation and identity theft, or that they have rights under FACTA. *See Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 464 (S.D.N.Y. 2007).  Second, even if the members of the class are aware of their rights, they will have little interest in controlling the prosecution of separate actions because the potential individual recovery is small and the costs of litigation are high. *See Diaz v. Residential Credit Solutions*, No. 12-CV-3781 (ADS)(ETB), 2014 WL 279473, at*11 (E.D.N.Y. January 23, 2014) ("[T]he amount of each class members individual claims is very small so it is not likely that any of them would have a specific interest in individually controlling the prosecution of the action.").

The other factors also weigh in favor of certification.  First, there is no litigation currently pending involving similar claims against Defendant. *See* Lash Decl., ¶ 5; *Kelen v. World Fin.*

11

*Network Nat'l Bank*, 295 F.R.D. 87, 94 (S.D.N.Y 2013). Second, the Class is being certified for settlement purposes only. If a class is settlement-only then the manageability factor is not even considered and the efficiency factor is given far less weight than usual. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Accordingly, and for the purposes of settlement, Defendant does not dispute that the Settlement Class should be certified.

## II.    CLASS COUNSEL SHOULD BE APPOINTED.

If certification is granted then the court must appoint class counsel. FED. R. CIV. P. 23(g). To make this determination the court must consider the following:

> [T]he work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions and other complex litigation and claims of the type asserted in the present action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class.

*Id.* "The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 340 (S.D.N.Y. 2004).

Plaintiff's counsel conducted thorough due diligence prior to filing this lawsuit and has actively litigated the case since its inception. Further, Plaintiff's counsel is currently handling several other class actions asserting similar violations of FACTA, and is constantly monitoring the legal landscape for these types of actions. Additionally, Plaintiff's counsel has substantial broad-based multi-jurisdictional experience in other types of complex litigation as well. A summary of Plaintiff's counsels' individual and collective experiences is attached as Exhibit E to the Lash Decl. Furthermore, Plaintiff's counsel has significant resources to commit to the vigorous and aggressive prosecution of this matter to promote the interests of Plaintiff and the

putative class members. Plaintiff's counsel is willing and prepared to provide additional information on these qualifications if so requested by this Court. Plaintiff requests that his counsel be appointed as Class Counsel.

## III.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.

A court may approve a class action settlement if it is fair, adequate, and reasonable and not a product of collusion. *See Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). To determine whether a settlement is fair, adequate and reasonable a district court must evaluate its procedural and substantive fairness. *See In re Holocaust Victims Asset Litig.*, 105 F.Supp.2d 139, 145 (E.D.N.Y. 2000). But its primary concern is with the substantive terms of the settlement. *See In re IPO Sec. Litig.*, 243 F.R.D. at 83. Courts determine procedural fairness by evaluating the negotiations that led up to the settlement. *In re Holocaust*, 105 F.Supp.2d at 145-46.

Specifically, Courts determine substantive fairness by evaluating the *Grinnell* factors. The *Grinnell* factors are (a) the complexity, expense, and likely duration of the litigation; (b) the reaction of the class to the settlement; (c) the stage of the proceedings and the amount of discovery completed; (d) the risks of establishing liability; (e) the risks of establishing damages; (f) the risks of maintaining the class action through trial; (g) the ability of the defendant to withstand a greater judgment; (h) the range of reasonableness of the settlement fund in light of the best possible recovery; and (i) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.1974) (abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.2000)).

13

A.   **The complexity, expense, and likely duration of the litigation; the risks of maintaining the class action through trial; and the ability of the defendant to withstand a greater judgment.**

In this case the *Grinnell* factors support a determination of substantive fairness with respect to the settlement. Litigating a class action is always a difficult proposition that requires significant time and expense. Here, there would be substantial discovery concerning the complex issue of whether ABP's actions in violation of FACTA were willful or constituted reckless noncompliance, including discovery concerning the time period that ABP was not in compliance with FACTA, what it knew about FACTA's truncation requirements, when it knew about FACTA's truncation requirements, what ABP did in response to such knowledge, what ABP did to identify compliance, or a lack of compliance, how ABP benefited from failing to comply, whether it intended to fail to comply, whether ABP recklessly permitted its point of sale machines to be out of compliance, and whether ABP has had similar privacy violations with respect to its customers in the past. Plaintiff would have undertaken this and more discovery to prove the willfulness element of Defendant's FACTA violation.

Similarly, given the experience and caliber of defense counsel, Defendant would have undertaken a vigorous defense focused on defeating Plaintiff's allegations of willfulness. Defendant's initial reaction to the Complaint in this case was to attack and assert that there were no allegations to support Plaintiff's willfulness claim. *See* Doc. 7. Even after Plaintiff was granted leave to amend its Complaint and address the alleged deficiencies raised by Defendant, Defendant filed a motion to dismiss arguing that willfulness could not be proven under the facts alleged or as a matter of law. *See* Docs. 20, 21. Plaintiff opposed this motion. *See* Doc. 22. Although this Court eventually denied Defendant's motion to dismiss. *See* Doc. 27. Defendant

14

would have continued with this argument and the litigation necessary to make its point, including substantial discovery and motion practice, and continuing this defense through trial if necessary.

Further, Plaintiff or Defendant would have likely appealed any adverse ruling.  In all, Plaintiff estimates that complete resolution of this dispute may have taken between three to five years, assuming one complete trial and one appeal.  Of course, there may have been a new trial and another appeal thus expanding the duration of the litigation.  Moreover, in the event of a loss by Defendant that resulted in statutory damages of $100 to $1000 for each of the potential 268,000 Class Members, Defendant may have declared insolvency in order to avoid paying the judgment.  Plaintiff considered this potential hollow victory, the cost and expense of prosecuting its case, and the anticipated duration of litigation in determining it was best for the class to resolve this dispute at this time.

**B.     The stage of the proceedings and the amount of discovery completed.**

After the complaint was filed, the parties engaged in briefing concerning Defendant's pre-filing letter to this Court.  A second complaint was filed, to which Defendant filed a motion to dismiss.  Following this Court's ruling denying Defendant's motion to dismiss, the parties began the process of settlement discussions.  Rather than conduct discovery and incur the expense, the parties exchanged information necessary for mediation submissions.  A mediation was held, which resulted in a preliminary settlement, and the final details of this settlement were achieved through several months of extensive negotiations between the parties.

Regarding settlement discussions, the parties engaged in an arm's length negotiation. The parties participated in pre-mediation discussions and agreed that a resolution should be discussed with the use of a third-party neutral.  Both parties submitted potential names for mediators and eventually selected a highly experienced third-party neutral.  This mediator

15

requested submission of mediation statements in advance of the mediation. Plaintiff submitted a mediation statement containing legal analysis concerning FACTA, the basis for class treatment of the case and arguments concerning application of the facts provided by Defendant to Plaintiff that would support a finding on behalf of Plaintiff that Defendant had wilfully violated FACTA. Similarly, Defendant submitted a mediation statement supporting its position that it would prevail in this dispute by demonstrating that Plaintiff could not prove willfulness. The parties then engaged in a mediation process wherein these arguments were discussed along with the potential weaknesses of both parties, the expense of litigation, and the result if a finding of liability was made against Defendant. Following the day-long mediation, the parties came to an agreement concerning the general parameters of the settlement, including the relief that would be afforded to the class. In particular, the parties agreed that each class member would have a choice of a $9.60 cash payment or a $15.00 voucher that could be transferred to another person, even a non-class member.

After extensive further discussions concerning the specifics of settlement, including negotiations concerning the methods of notice, determination of what constitutes a valid claim and the method for class members to redeem their valid claims, the parties eventually agreed to the terms set forth in the settlement agreement and that formed the basis of this motion for preliminary approval of the settlement. *See* Lash Decl., Ex. B.

      **C.**    **The reaction of the class to the settlement.**

The class should react positively to this settlement. It provides real, meaningful relief to each class member in the form of a $9.60 cash payment or a $15.00 transferable voucher toward the purchase of any item for sale at any of the Au Bon Pain's Retail Locations. *See* Lash Decl., Ex. B, at ¶ II(1). While it is difficult to predict redemption, the choice of either cash relief or a

16

voucher that can be transferred is different than, and in many ways superior to, a standard coupon settlement used in many other FACTA and consumer class actions settlements.

ABP is unable to determine with specificity all of the class members and therefore the parties have agreed on claim validation process that will benefit the class.  Further, the settlement agreement provides three separate ways for a class member to make his or her claim:

(1) The class member can submit a declaration that he or she made a credit or debit card purchase of $15.00 or more at one of ABP's Retail Locations during the Class Period (this document will include the first digit and last four digits of the credit or debit card used in the purchase, the type of credit card, and the general location (e.g., city, town, municipality) of the ABP Retail Location at which the purchase was made; or

(2) The class member can submit a copy of his or her credit or debit card statement showing the purchase from an Au Bon Pain Retail Location for $15.00 during the Class Period; or

(3) The class member can submit its customer copy of the receipt he or she possesses from an ABP Retail Location that is in violation of FACTA.  In particular, the class member's receipt should be from an ABP Retail Location, on which is printed more than five digits of the class member's credit or debit card number and/or the expiration date. *See* Lash  Decl., Ex. B, ¶ VIII.

A class member can either have a check mailed to his or her address or receive a fully transferable voucher.  Lash Decl., Ex. C, ¶ VIII.  These vouchers shall be fully transferable, but expire within one hundred and twenty days (120) days of the date the voucher is issued. *Id*.  No Class Member may submit more than one Valid Claim. *Id.*  In addition, Defendant has agreed to

17

the Court issuing an Order requiring Defendant to comply with FACTA at all of its Retail Locations.  *See* Lash Decl., Ex. B, ¶ II(2).

Additional value is created through Defendant's agreement to fund notice and administration, which is an expensive process.  *See* Lash Decl., Ex. B, ¶ VI(4).  The parties agreed upon KCC Class Action Services ("KCC") to be the Settlement Administrator.  KCC is highly experienced and well-regarded in the field, having served as the administrator in over 1,500 class action settlements.  *See* http://www.kccllc.com/class-action/what-we-do.  KCC also will be responsible for verifying the claims.  All costs of notice and administration will be borne by Defendant, and will not reduce the compensation available to the Settlement Class.

In all, there is significant value provided to the class by the settlement agreement.  In addition to the injunctive relief, the value of the settlement that could be funded by Defendant, assuming complete redemption, would be $2,572,800 in cash payments to class members or $4,020,000 in vouchers to class members that can be transferred to non-class members.  It is anticipated the class administrator will receive a substantial number of valid claims.  A comprehensive website will be hosted at the Defendants' expense to serve as additional resource. Finally, Class Counsel will be available to assist potential Class Members.  As such, there is significant value created by this settlement, potentially in the millions of dollars, if redemption rates are high, which should be sufficient for the class.

Defendant has also agreed to pay Plaintiff a class representative fee of up to $2,000, and attorneys' fees, expenses and costs in an amount awarded by the Court, not to exceed $375,000. Lash  Decl., Ex. B, ¶ VII . None of these payments reduce the value of the class relief provided from either the cash payment option or the transferable voucher option.

18

**D.     The risks of establishing liability; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.**

For Plaintiff and the Class to prevail at trial, they would have to first obtain class certification. There is always risk in seeking certification of a contested class. While the vast majority of courts that have been presented with the issue have certified similar FACTA classes,[3] not all of them have,[4] and new and unique legal theories could be advanced that could result in denial of a contested certification motion.

Even if the Court were to certify a contested class, there is risk inherent in proceeding to trial, where Plaintiff will have the burden of proving that Defendants acted willfully. To prove that Defendant's conduct in providing the non-compliant receipts was "willful" within the meaning of Section 1681n of the FCRA or otherwise demonstrate willfulness through intentional acts by Defendant or its reckless disregard. If willfulness were proven, each Class Member would be entitled to a damage award between $100 and $1,000 and the possibility of punitive damages. *See* 15 U.S.C.A. § 1681. While such a recovery would surpass the value created in the proposed settlement, it would also require Plaintiff and the Class to overcome the hurdles of obtaining class certification and establishing willfulness.

While Plaintiff still believes his case is strong, he understands that Defendant may cite to cases where, as a matter of law, willfulness was found to be lacking, *see Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486 (7th Cir. 2012); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371 (3d Cir. 2012), and will present arguments and facts supporting their assertions that

---

[3] *See, e.g., Hammer v. JP's Southwestern Foods, L.L.C.*, 267 F.R.D. 284 (W.D. Mo. 2010); *Beringer v. Standard Parking Corp.*, Nos. 07-C-5027, 07-C-5119, 2008 WL 4390626 (N.D. Ill. 2008); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 216 (N.D. Ill. 2008); *Reynoso v. South County Concepts*, No. SACV07-373-JVS, 2007 WL 4592119, *4 (C.D. Cal. 2007); *Troy v. Red Lantern Inn, Inc.*, No. 07-C-2418, 2007 WL 4293014 (N.D. Ill. 2007).

[4] *See Grimes v. Rave Motion Pictures Birmingham*, L.L.C., 264 F.R.D. 659, 663 (N.D. Al. 2010); *Najarian v. Charlotte Russe, Inc.*, No. CV 07-00501 RGK (CTx), 2007 U.S. Dist. LEXIS 59879 (C.D.Cal. June 12, 2007).

Defendant did not willfully print improperly truncated receipts. Specifically, Defendant likely will offer evidence for the purpose of establishing that it attempted to comply with the law and protect customers from identity theft by delegating the implementation of FACTA-compliance software to a third party who provided assurance of proper implementation and by masking a portion of the credit card numbers and in some instances the expiration dates. In addition, Defendant may offer evidence concerning its history of compliance with the law and that it immediately corrected the problem after learning of this lawsuit. Such evidence could result in a ruling by the Court or a jury that Defendant did not act willfully. *See, e.g., Aliano v. Joe Caputo and Sons-Alogonquin, Inc.*, No. 9-C-910, 2011 WL 1706061, at*4 (N.D. Ill. May 5, 2011) (holding that good-faith reliance on point-of-sale professionals factors against willfulness finding); *Gardner v. Appleton Baseball Club, Inc.*, No. 09–C–705, 2010 WL 1368663 (E.D.Wis. 2010) (attempted compliance shows lack of willfulness); *Cowley v. Burger King Corp.*, No. 07–21772, 2008 WL 8910653 (S.D. Fla. 2008) (masking portion of numbers indicates lack of willfulness).

Conversely, Plaintiff will attempt to demonstrate willfulness by establishing, *inter alia*, that Defendant was aware of FACTA, was a member of trade organizations that provided repeated notice to Defendant, was provided repeated notice regarding FACTA's requirements by Defendant's credit card vendors, that Defendant made representations to credit card vendors regarding compliance with FACTA, that Defendant hired vendors to address FACTA issues. Plaintiff believes such evidence is sufficient to establish willfulness, but such a finding is certainly not a foregone conclusion. *See Rosenthal v. Longchamp Coral Gables LLC*, 603 F.Supp.2d 1359, 1362 (S.D. Fla. 2009) (holding that fact that FACTA's requirements are well-publicized and contained in the defendant's credit card agreement is not sufficient to show

20

willfulness); *Gardner*, 2010 WL 1368663 (same).  Thus, on balance, there is certainly a risk of an adverse finding on the issue of willfulness.[5]

Even if this Court were to certify the class and then Plaintiff was able to establish willfulness at trial, there is a question of whether a statutory (and possibly punitive) damage award of such a magnitude (up to $1000 for each transaction in violation of FACTA) could be deemed unconstitutional.  *See Beringer v. Standard Parking Corp.*, Nos. 07 C 5027, 07 C 5119, 2008 WL 4390626, at*5 (N.D. Ill. Sept. 24, 2008), (citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d at 954; *Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003)). FACTA provides that for each violative receipt, the class will receive between $100 and $1,000. 15 U.S.C. § 1681n.  As acknowledged by Defendant in the Settlement, there are potentially approximately 268,000 Class Members, which could result in a verdict in the range of $26.8 million to $268 million.  Plaintiff recognizes that Defendant could appeal and argue that a large verdict violates its due process rights.  *See Beringer*, 2008 WL 4390626, at *5 (noting that large damage award in FACTA case could violate due process rights); *Hanlon v. Aramark Sports, LLC*, No. 09-465, 2010 WL 374765, at **4-5 (W.D. Pa. Feb. 3, 2010) (certifying settlement class; finding due process concerns are allayed in negotiated settlement).  Thus, by settling the matter, Plaintiff prevents the possibility of an adverse appellate ruling and guarantees that class members will have the opportunity to receive either a cash award or a transferable voucher now, rather than after a trial and a potential appeal.

---

[5] There is a substantial question whether a jury would find willful, as opposed to negligent, conduct.  Further, a showing of negligent conduct only entitles a plaintiff to actual damages and attorneys' fees.  15 U.S.C.A. § 1681o. Plaintiff has not pled a cause of action for actual damages, thus any finding of negligent conduct on the part of the Defendant will result in no benefit to the Class.

**IV.    THE CLASS NOTICE PLAN IS APPROPRIATE**

Federal Rule of Civil Procedure 23(c)(2) requires the court to direct to class members the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2). The Due Process Clause of the United States Constitution guarantees class members the right to notice of class certification or settlement. *See* U.S. Const., Amend. V. But the Due Process Clause does not require actual notice to each party intended to be bound by the terms of a class action settlement. *See State of W. Va. V. Chas. Pfizer & Co.*, 440 F.2d 1079, 1090 (2d Cir. 1971) ("This court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning."); *see also In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 168 (2d Cir. 1987) (holding that notice sufficient where reasonable efforts taken to identify specific class members and advertisements were made in targeted publications as well as newspapers of general circulation).

In this case, Defendant does not maintain individual contact information for Class Members; thus, the Parties cannot reasonably provide notice directly to each individual Class Member.  Accordingly:

1.    Defendant will display on every electronically printed receipt involving a credit or debit card purchase at each of ABP's Retail Locations beginning no later than 14 days after the Court enters a Preliminary Approval Order for a period of 14 days. *See* Lash Decl., Ex. B, ¶ VI(3)(a). This printed notice on every receipt will read as follows:

> You may be eligible for a payment or voucher recovery as part of a class action settlement with Au Bon Pain.  A settlement has been preliminarily approved by the United States District Court for the

> Eastern District of New York in a lawsuit involving claims that in or prior to August 2012 Au Bon Pain improperly provided some customers with transactions of $15 or more with credit or debit card receipts showing more than the last five digits of the card number and/or expiration date.  For more information about the class action settlement and eligibility for recovery, visit www._____.com.

Lash Decl., Ex. F.

2.      Furthermore, Defendant will publish notice at least once in *USA Today* or a similar national publication or multiple regional or local newspapers with circulation in the regions in which the Defendant owned and operated Retail Locations in August 2012.  *See* Lash Decl., Ex. B, ¶ VI(3)(b). Publication Notice shall appear in a 1/8 page advertisement, and will run within 21 days following entry of the Preliminary Approval Order.  *Id*.  This publication notice will read as follows:

> You may be eligible for a payment or voucher recovery as part of a class action settlement with Au Bon Pain.  A settlement has been preliminarily approved by the United States District Court for the Eastern District of New York in a lawsuit involving claims that in or prior to August 2012 Au Bon Pain improperly provided some customers with transactions of $15 or more with credit or debit card receipts showing more than the last five digits of the card number and/or expiration date.  For more information about the class action settlement and eligibility for recovery, visit www._____.com.

Lash Decl., Ex. G.

3.      Additionally, the settlement administrator, KCC, will post a website notice, as well as a comprehensive "Full Legal Notice" regarding the Action and the terms of the Settlement Agreement on a website to be created by the Claims Administrator.  *See* Lash Decl., Ex. B, ¶ VI(3)(c), Exs. H and I. The website shall be maintained by the Administrator until 30 days following entry of the Final Order.  Lash Decl., Ex. B, ¶ VI(3)(c).

4.      The website created by KCC shall also include a Claims Form that may be either completed and submitted online or downloaded and mailed to the Settlement Administrator.  A copy of the form of the Claims Form is attached to the Lash Decl. as Exhibit J.   All Class Members will be given the opportunity to object to the terms of the settlement or opt-out of the Class.

Thus, Plaintiff submits that the Notice plan as set-out in the Settlement Agreement constitutes the best notice practicable under the circumstances and fully comports with the notice requirements of Rule 23 and the Due Process Clause.   Plaintiff respectfully requests that the proposed Notice be approved, and that the Court order the posting and publication of Notice.

## V.      ESTABLISHMENT OF A FINAL APPROVAL HEARING

The third step in the class action settlement process is the final approval hearing, at which time the Court may finally determine whether the proposed Settlement is fair, reasonable, and adequate.   *See* Fed. R. Civ. P. 23(e)(2).   At the final approval hearing, proponents of the Settlement may explain and describe its terms and conditions and Class Members and/or their counsel may be heard in support of or in opposition to the Settlement.   Plaintiff requests that this Court preliminary approve the settlement as described above and set a date for a final approval hearing.

## CONCLUSION

"The law favors settlements of class actions no less than of other cases." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y.1992) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982).); *see also* Newberg, *Class Actions* § 11.41 (citing cases). Plaintiff respectfully submits for the foregoing reasons that this Settlement is fair, adequate and reasonable and should be preliminarily approved.

Dated: New York, New York - April 4, 2014

SPENCER FANE BRITT & BROWNE LLP

/s/ Bryant T. Lamer
Joshua C. Dickinson (admitted *pro hac vice*)
Bryant T. Lamer (admitted *pro hac vice*)
1000 Walnut Street, Suite 1400
Kansas City, MO 64105
816-474-8100
Fax: 816-4743216
jdickinson@spencerfane.com
blamer@spencerfane.com

THE LAW OFFICES OF SHIMSHON WEXLER, PC
Shimshon Wexler
216 W. 104th Street, # 129
New York, NY 10025
212-760-2400
shimshonwexler@yahoo.com

Herzfeld & Rubin, P.C.
Robert L. Lash
125 Broad Street
New York, NY 10004
212-471-8500
Fax: 212-232-6633
*rlash@herzfeld-rubin.com*

*Attorneys for Plaintiff Yehuda Katz*