UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
:
YEHUDA KATZ, :
Individually and on behalf of a class, :   Case No. 12 Civ. 4173 (ENV)(RER)
:
                  Plaintiff, :
:
    -against- :
:
ABP CORPORATION and DOES 1-10, :
:
                  Defendant. :
------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ENTRY OF FINAL JUDGMENT AND ORDER OF DISMISSAL**

Respectfully Submitted,

| | |
|---|---|
| SPENCER FANE BRITT & BROWNE LLP | HERZFELD & RUBIN PC |
| Joshua C. Dickinson (admitted *pro hac vice*) | Michael R. Rudick |
| Bryant T. Lamer (admitted *pro hac vice*) | Howard L. Wexler |
| 1000 Walnut Street, Suite 1400 | 125 Broad Street |
| Kansas City, MO 64105 | New York, NY 10004 |
| 816-474-8100 | 212-471-8500 |
| jdickinson@spencerfane.com | mrudick@herzfeld-rubin.com |
| blamer@spencerfane.com | hwexler@herzfeld-rubin.com |

THE LAW OFFICES OF SHIMSHON WEXLER PC
Shimshon Wexler
216 West 104th St., #129
New York, NY 10025
shimshonwexler@yahoo.com
212-760-2400

*Attorneys for Plaintiff Yehuda Katz*

**TABLE OF CONTENTS**

I. NATURE OF THE LITIGATION .................................................................................1

II. Compliance with Preliminary Approval Order and Settlement Agreement ........................4

    A. The Class Received Notice of the Settlement Pursuant to the Court's Order ..................................................................................................................4

    B. Claims Process Followed as Required Under the Preliminary Approval Order ..................................................................................................................5

    C. Requests for Exclusions and Objections ...............................................................6

III. The Settlement is Fair, Reasonable and Adequate and Should be Finally Approved ...........................................................................................................................6

    A. There is Procedural Fairness in the Settlement .....................................................7

    B. There is Substantive Fairness in the Settlement ....................................................8

        1. Complexity, Expense and Likely Duration of the Litigation ......................9

        2. The Class Members' Reaction to the Settlement .....................................10

        3. The stage of the proceedings and the amount of discovery completed ..................................................................................................11

        4. The risks of establishing liability ..............................................................12

        5. The risks of establishing damages ............................................................13

        6. The risks of maintaining the class action through trial. ............................13

        7. The ability of the defendant to withstand a greater judgment ..................14

        8. The range of reasonableness of the settlement fund in light of the best possible recovery and the attendants risks of litigation ....................14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Beringer v. Standard Parking Corp.*,
  Nos. 07-C-5027, 07-C-5119, 2008 WL 4390626 (N.D. Ill. 2008) ...............................12, 13, 15

*D'Amato v. Deutsche Bank*,
  236 F. 3d 78 (2d. Cir. 2001)...................................................................................6, 7, 11, 14

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir.1974).............................................................................................8, 9, 14

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ....................................................................................7, 8

*Ebbert v. Nassau County*,
  2011 WL 6826121 (E.D.N.Y. 2011)...........................................................7, 8, 9, 10, 11, 12, 13

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir.2000)...........................................................................................................8

*Greenspun v. Bogan*,
  492 F.2d 375 (1st Cir. 1974)........................................................................................................6

*Grimes v. Rave Motion Pictures Birmingham, L.L.C.*,
  264 F.R.D. 659 (N.D. Al. 2010) ................................................................................................12

*Grunin v. International House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ......................................................................................................6

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
  142 F.R.D. 588 (S.D.N.Y.1992) ................................................................................................15

*Hammer v. JP's Southwestern Foods, L.L.C.*,
  267 F.R.D. 284 (W.D. Mo. 2010) .............................................................................................12

*Hanlon v. Aramark Sports, LLC*,
  No. 09-465, 2010 WL 374765 (W.D. Pa. Feb. 3, 2010)............................................................15

*In re Holocaust Victims Asset Litig.*,
  105 F.Supp.2d 139 (E.D.N.Y. 2000) ...........................................................................................6

*Maley v. Del Global Techs Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................................................10

*Matthews v. United Retail, Inc.*,
 248 F.R.D. 210 (N.D. Ill. 2008) ............................................................................... 12

*Miller v. Republic Nat'l Life Ins. Co.*,
 559 F.2d 426 (5th Cir. 1977) ..................................................................................... 6

*Najarian v. Charlotte Russe, Inc.*,
 No. CV 07-00501 RGK, 2007 U.S. Dist. LEXIS 59879 (C.D.Cal. June 12,
 2007) ....................................................................................................................... 12

<u>*In re NASDAQ Litig.*</u>,
 <u>187 F.R.D. at 477–78</u> .............................................................................................. 14

<u>*In re PaineWebber Litig.*</u>,
 <u>171 F.R.D. at 129</u> .................................................................................................... 14

*Reynoso v. South County Concepts*,
 No. SACV07-373-JVS, 2007 WL 4592119 (C.D. Cal. 2007) ................................. 12

*Troy v. Red Lantern Inn, Inc.*,
 No. 07-C-2418, 2007 WL 4293014 (N.D. Ill. 2007) ............................................... 12

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir.2005) ......................................................................................... 8

**Federal Statutes**

15 U.S.C. § 1681 ............................................................................................................. 13

15 U.S.C. § 1681, *et seq.* ................................................................................................... 1

15 U.S.C. § 1681c(g) ......................................................................................................... 1

15 U.S.C. § 1681n ............................................................................................................. 1

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... 1, 4

Fed. R. Civ. P. 23(a) ......................................................................................................... 3

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... 3

Fed. R. Civ. P. 23(e) ...................................................................................................... 4, 6

**Other Authorities**

Newberg, *Class Actions* § 11.41 ..................................................................................... 15

Plaintiff Yehuda Katz ("Plaintiff"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, hereby respectfully requests an Order from this Court finally approving the proposed settlement and entering a final judgment and dismissal. In support of their Unopposed Motion, Plaintiffs state as follows:

**I.      NATURE OF THE LITIGATION**

In 2003, the Fair and Accurate Credit Transactions Act ("FACTA") was signed into law. The purpose of FACTA, an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), is to protect consumers from identity theft and credit card and debit card fraud. In particular, FACTA provides that:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

15 U.S.C. § 1681c(g). To incentivize compliance with this provision, the statute subjects willful violators of the Act to damage awards in an amount between $100 and $1,000 per violation. 15 U.S.C. § 1681n.

On August 5, 2012, Plaintiff made a purchase totaling $22.11 at an Au Bon Pain Retail Location using his credit card, and was provided the customer copy of his receipt. That receipt displayed 8 digits of Plaintiff's credit card number, as well as the card's expiration date. On August 20, 2012, Plaintiff filed his Class Action Complaint against Defendant ABP Corporation ("ABP"), which owns and operates Au Bon Pain Retail Locations in the United States, and filed an amended complaint on December 13, 2012. *See* Dkt. Nos. 1 and 12. Plaintiff alleged that ABP willfully violated FACTA by failing to properly truncate the display of credit and debit card numbers and expiration dates on electronically printed receipts provided to their customers. He further asserted that ABP's non-compliance was willful and sought statutory damages,

1

punitive damages and attorneys' fees on his behalf, and for the members of the proposed Class. On January 24, 2013, ABP filed a motion to dismiss the amended complaint, which the court denied by Memorandum and Order dated June 4, 2013. *See* Dkt. No. 27.

ABP filed an Answer on July 5, 2013 denying it had engaged in any unlawful conduct. *See* Dkt. No. 30. Beginning on October 7, 2013, the Parties mediated the dispute before Roger M. Deitz, Esq., a leading, accredited mediator in New York City, who has successfully mediated over 1,500 disputes, including many complex commercial, consumer, and class actions. In connection with the mediation, the Parties shared substantial discovery and worked toward settlement. For example, ABP provided information regarding the number of individuals in the proposed Class, the number of credit/debit card transactions during the Class Period, the number of stores impacted by the disclosure of the credit card information, the reason for the disclosure, and the length of the time the disclosure occurred. These coordinated discovery efforts resulted in significant efficiencies by avoiding protracted litigation and use of resources to obtain facts that would be necessary for both pursuing and defending the case. Further, through the mediator, the parties engaged in discussions concerning the strength of the claims and defenses, as well as significant discussions concerning the applicability of caselaw and the potential impact it could have on each party's position. In addition, the parties discussed the potential impact a judgment would have upon ABP.

As a result of the significant pre-mediation discovery and arms-length negotiations during mediation and thereafter, the parties reached a settlement that provided over 268,000 class members with the choice of obtaining a cash payment of $9.60 or a $15.00 transferable voucher that could be used at any retail location owned and operated by ABP in the United States (a "Retail Location"). On April 4, 2014, Plaintiff filed its Unopposed Motion for Conditional Class

2

Certification, Appointment of Class Representative, Appointment of Class Counsel, Preliminary Approval of Class Action Settlement and Notice to Class and Setting of Final Approval Hearing. *See* Dkt. 44.

On October 3, 2014, this Court granted Plaintiff's Unopposed Motion for Conditional Class Certification, Appointment of Class Representative, Appointment of Class Counsel, Preliminary Approval of Class Action Settlement and Notice to Class and Setting of Final Approval Hearing and set the Final Approval Hearing for February 3, 2015 ("Preliminary Approval Order"). *See* Dkt. 52. As part of that Order, this Court found preliminarily that, for purposes of settlement only, the proposed Settlement Class met the requirements of Fed. R. Civ. P. 23(a), including finding numerosity satisfied with potentially 268,000 class members. *Id.* at ¶¶ 2-7. Further, this Court found that Plaintiff would fairly and adequately protect the interests in the class and therefore appointed Plaintiff as the representative party. *Id.* at ¶ 8. This Court found Rule 23(b)(3) satisfied because, in part, "[t]he core legal issues center on whether Settling Defendant provided improperly truncated sale receipts, whether this conduct violates FACTA, and whether Settling Defendant's conduct was willful." *Id.* at ¶ 9. In appointing Class Counsel, this Court reviewed class counsel's qualifications, found that "Plaintiff's counsel did substantial work in prosecuting this matter, including successfully defendant against Settling Defendant's motion to dismiss (Dkt. No. 27), and found that the "work Plaintiff's counsel has performed in litigating and settling this case demonstrates their commitment to representing the class." *Id.* at ¶¶ 11-14.

Regarding the Settlement Agreement, this Court found the arms-length negotiations by counsel, involving the experienced mediator Roger M. Dietz, resulted in settlement terms that appeared to fall within the range of possible approval. *See* Dkt. 52. at ¶¶ 15-17. This Court

3

approved the Parties' Notice Plan as set out in the Settlement Agreement and in the motion for preliminary approval, concluding that such Notice met the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. *Id.* at ¶¶ 19-20. The Court further found that the Parties' proposed Notice procedures were the best notice practicable under the circumstances given the impracticability of communicating directly with potential class members. *Id.* at ¶ 21. Thus, the Court directed the Parties to provide notice of the Settlement in accordance with the plan set forth in the Settlement Agreement, which included point of sale notice, publication notice and website notice. *Id.* at ¶¶ 21-22.

As set forth below, the parties have carried out the terms of both the Settlement Agreement and this Court's Preliminary Approval Order and now seek final approval pursuant to Fed. R. Civ. P. 23(e).

## II.     Compliance with Preliminary Approval Order and Settlement Agreement

### A.     The Class Received Notice of the Settlement Pursuant to the Court's Order

In accordance with the Court's Preliminary Approval Order, notice was published, printed on customer receipts at the Point of Sale and conveyed on a website explaining the settlement. *See* Dkt. 52, ¶ 37 (requiring declarations attesting to notice compliance). First, notice was published in the October 14, 2014 issue of USA Today with circulation in the regions in which ABP Corporation owned and operated Retail Locations in August 2012. Dkt. 54 (Declaration of Eric Robin). Second, for fourteen full days (October 16, 2014 until October 29, 2014), Defendants provided Point of Sale Notice in the form specified in the Settlement Agreement and such notice was electronically printed on receipts for credit or debit card transactions at the point of sale at each Retail Location owned and operated by Defendant. Dkt. 55 (Declaration of Christopher Incorvati). Third, on October 15, 2014, the class action administrator (KCC) established an operational website (www.katzfactasettlement.com)

4

dedicated to the settlement to provide information to Class Members and to answer frequently asked questions wherein visitors could download: (1) the Long Form Notice; (2) the Short Form Notice; (3) the Claim Form; (4) the First Amended Complaint; (5) the Preliminary Approval Order; and (6) the Settlement Agreement. Dkt. 56 (Declaration of Eric Robin).

### B. Claims Process Followed as Required Under the Preliminary Approval Order

The Parties made the making of claims simple and easy to accomplish for Class Members. If a Class Member submitted a Valid Claim could elect a remedy of $9.60 in cash or a voucher for use in one of Defendant's Retail Locations in the amount of $15.00. Pursuant to the Preliminary Approval Order, Class Members were not required to show an improperly truncated receipt in order to be eligible. Rather, Class Members could submit either on the website or by letter a sworn declaration that he or she made a credit or debit card purchase of $15.00 or more at one of the Defendant's Retail Locations during the class period (along with identifying information required by the Preliminary Approval Order) as well as the general location to the best of the customer's knowledge where they purchased from Defendant during the class period. Or the Class Member could provide a bank statement demonstrating a purchase of $15.00 or more during the Class Period at one of Defendant's Retail Locations. If the class member did possess a copy of a receipt from one of Defendant's Retail Locations that contained more than five (5) digits of the credit or debit card and/or the expiration date from the credit or debit card, the Class Member could submit this receipt to the Class Administrator. The settlement also provided that a class member was to be notified if his or her initial claim was rejected and that he or she could resubmit a new claim correcting the deficiency (Settlement Agreement VIII 2(d)).

Combined with the above discussed notice format, the claim form process set forth in the Preliminary Approval Order made it easy for Class Members to submit claims.

5

### C.     Requests for Exclusions and Objections

Class Members were required to submit to the Class Administrator any written request for exclusion to the claims administrator by December 23, 2014and then filed with the Court no later than January 7 2015.  *See* Dkt. 52, ¶ 24 (within 15 days of the Opt-out date of December 23, 2014).  No Class Member chose to exclude him/herself from the Settlement. Further, there have been no objections submitted.  Class Members intending to object to the settlement were to have filed such objections and served the parties on or before December 4, 2014 (30 days prior to the Final Approval Hearing).  *Id*, ¶ 27. No Class Member filed an objection or served the parties as required under the Preliminary Approval Order.

Three months will have elapsed between the posting of Notice and the Final Approval Hearing.  This period is significantly longer than that deemed adequate in other class action settlements.  *See Grunin v. International House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (19 days between notice mailings and settlement hearing sufficient); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977) (four weeks between notice and settlement hearing sufficient); *Greenspun v. Bogan*, 492 F.2d 375, 378 (1st Cir. 1974) (four weeks between notice and settlement hearing sufficient).

### III.    The Settlement is Fair, Reasonable and Adequate and Should be Finally Approved

A court may approve a class action settlement after holding a hearing and finding that the settlement is "fair, reasonable and adequate".  Fed. R. Civ. P. 23(e).  To determine whether a settlement is fair, adequate and reasonable a district court must evaluate its procedural and substantive fairness.  *See D'Amato v. Deutsche Bank*, 236 F. 3d 78, 87 (2d. Cir. 2001); *In re Holocaust Victims Asset Litig.*, 105 F.Supp.2d 139, 145 (E.D.N.Y. 2000).  Procedural fairness evaluates the negotiations leading to the settlement while the court overall reviews the

substantive terms of the settlement. *Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231, 238 (E.D.N.Y. 2010).

### A. There is Procedural Fairness in the Settlement

Regarding procedural fairness, a court reviewing a proposed settlement "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel ... possessed the [necessary] experience and ability, and have engaged in the discovery necessary to effective representation of the class's interests." *D'Amato*, 236 F.3d at 85. This Court may presume that "fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Ebbert v. Nassau County*, 2011 WL 6826121, at *7, (E.D.N.Y. 2011) (quoting Manual for Complex Litigation, Third, § 30.42 (1995); *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.2005)).

Here, after litigating the case through a motion to dismiss, the Parties determined it would be in the best interests of the class the exchange discovery for the purposes of attempting to reach mediated settlement. As such, the parties exchanged significant discovery regarding the potential class members, the number of credit/debit card transactions during the Class Period, the stores impacted by the credit card and debit card information disclosure, the underlying basis for the disclosure, the timing of the disclosure and the parameters for disclosure of the information.

The Parties engaged a highly experienced mediator to assist in resolving the dispute. On October 7, 2013, counsel for the parties met in New York to mediate with Mediator Roger M. Dietz, who has successfully mediated over 1500 disputes, involving multiple issues of law including complex commercial, consumer and class action matters. Pursuant to the mediator's direction and submissions, the parties exchanged briefing and held discussions concerning the claims and defenses of each side, along with practical discussions concerning the impact of a

7

judgment against Defendant. The negotiations did not result in a final settlement after the first mediation meeting. Instead, the parties continued to mediate for months following the mediation through both the mediator and each other until the final terms of a settlement agreement were agreed to in April of 2014. *See* Dkt. 34, 35, 36, 37 and 39 (notifying Court of ongoing settlement negotiations from October 2014 through February 2015). Once the terms were agreed to, the Parties exchanged multiple drafts of the settlement filings until submission of the final settlement documents with this Court. Therefore, because this settlement between the Parties was reached after substantive litigation concerning the merits of Plaintiff's claims, significant discovery concerning the most relevant issues so as to achieve an effective representation of the class's interests, and extensive negotiations conducted at arms-length and with the assistance of a highly skilled mediator, this Court should find that that procedural fairness does exist with respect to the settlement. *See Ebbert*, 2011 WL 6826121, at *8; *Dupler,* 705 F. Supp. 2d at 238.

**B.   There is Substantive Fairness in the Settlement**

The settlement is substantively fair. The Court should examine fairness in light of the strong judicial policy favoring settlement of class action suit. *Wal–Mart Stores,* 396 F.3d at 117. Specifically, Courts determine substantive fairness by evaluating the *Grinnell* factors. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.1974) (abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.2000); *Wal–Mart Stores,* 396 F.3d at 117; *Dupler,* 705 F. Supp. 2d at 238. The *Grinnell* factors are (a) the complexity, expense, and likely duration of the litigation; (b) the reaction of the class to the settlement; (c) the stage of the proceedings and the amount of discovery completed; (d) the risks of establishing liability; (e) the risks of establishing damages; (f) the risks of maintaining the class action through trial; (g) the ability of the defendant to withstand a greater judgment; (h) the range of reasonableness of the settlement fund in light of the best possible recovery; and (i) the range of reasonableness of the

8

settlement fund to a possible recovery in light of all the attendant risks of litigation. In this case the *Grinnell* factors support a determination of substantive fairness with respect to the settlement.

### 1.    Complexity, Expense and Likely Duration of the Litigation

Class actions are by their nature complex. *See Ebbert*, 2011 WL 6826121, at *9. With respect to a consumer class action concerning this statutory claim, the complexity surrounds Defendant's defenses, including whether there is a basis to establish willfulness and how this Court would have determined the definition of willfulness. To address this complex issue and to develop the case for a thorough mediation, there was discovery regarding the number of individuals in the Class, the number of credit/debit card transactions during the Class Period, the number of stores impacted by the disclosure of the credit card information, the reason for the disclosure, the length of the time the disclosure occurred, and the parameters for disclosure of the information.

There would have been additional discovery to address whether ABP's actions in violation of FACTA were willful or constituted reckless noncompliance, including discovery concerning the time period that ABP was not in compliance with FACTA, what it knew about FACTA's truncation requirements, when it knew about FACTA's truncation requirements, what ABP did in response to such knowledge, what ABP did to identify compliance, or a lack of compliance, how ABP benefited from failing to comply, whether it intended to fail to comply, whether ABP recklessly permitted its point of sale machines to be out of compliance, and whether ABP has had similar privacy violations with respect to its customers in the past. Furthermore, there would have been third-party discovery regarding contractual relationships between credit card merchants and Defendant and potential discovery with respect to any point of sale provider used by Defendant Plaintiff would have undertaken this and more discovery to

9

prove the willfulness element of Defendant's FACTA violation. This anticipated discovery would have taken a substantial amount of time and required significant resources.

Similarly, Plaintiff's counsel received and anticipated a robust and strong defense by Defendant's counsel, who are highly experienced in this area. From the beginning of the case Defendant's counsel litigated with vigor, including filing the request for pre-motion conference (Dkt. 7), following which Plaintiff amended its Complaint (Dkt. 12), and Defendant challenged the amended Complaint with a motion to dismiss (Dkt. 20). Based on the interactions with Defendant's counsel, their experience, their legal acumen and knowledge of consumer class actions and this developing area of the law, and their highly skilled briefing, Plaintiff's counsel anticipated (and received during negotiations) a strong, long and expensive defense by Defendant's counsel. Further, Plaintiff or Defendant would have likely appealed any adverse ruling, thus requiring a total time to litigate the case of three to five years. The settlement provided a "substantial and tangible present recovery" to the Class Members now, rather than at a later date potentially five years away, if ever. *Maley v. Del Global Techs Corp.*, 180 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); *Ebbert*, 2011 WL 6826121, at *9. Therefore, this factor weighs in favor of settlement.

### 2. The Class Members' Reaction to the Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighted in considering its adequacy…In fact, the lack of objections may well evidence the fairness of the [s]ettlement." *Ebbert*, 2011 WL 6826121, at *10 quoting *Maley*, 186 F. Supp. 2d at 362. Here, there were no objections to the settlement. Further, there were no requests to be excluded from the class. This factor weighs in favor of final approval of the settlement.

### 3. The stage of the proceedings and the amount of discovery completed

After the complaint was filed, the parties engaged in briefing concerning Defendant's pre-filing letter to this Court. A second complaint was filed, to which Defendant filed a motion to dismiss. Following this Court's ruling denying Defendant's motion to dismiss, the parties began the process of settlement discussions. Rather than conduct discovery and incur the expense, the parties exchanged information necessary for mediation submissions. A mediation was held, which resulted in a preliminary settlement, and the final details of this settlement were achieved through several months of extensive negotiations between the parties.

Class Counsel obtained sufficient information from Defendants through discovery to properly analyze the merits of the case in order to enter into a settlement. *Ebbert*, 2011 WL 6826121, at *10. While the case was not nearing trial or at an advanced stage of litigation, the discovery obtained was all that would have been necessary to take the case to trial, except for discovery concerning willfulness. *See D'Amato*, 236 F. 3d at 87 (lack of formal discovery did not impact support for final approval of settlement where extensive exchange of documents and information). In particular, there was discovery concerning the number of individuals in the Class, the number of credit/debit card transactions during the Class Period, the number of stores impacted by the disclosure of the credit card information, the reason for the disclosure, the length of the time the disclosure occurred, and the parameters for disclosure of the information. As a result of this information, Class Counsel were "well able to assess their position, having had sufficient time to realistically evaluate the strengths and weaknesses of their claims and the fairness of the proposed settlement." *Id.* Therefore, the state of proceedings favors final approval of the settlement.

11

### 4. The risks of establishing liability

This factor supports final approval if the settlement "resolves this significant and cumulative uncertainty in a manner favorable for all." *Ebbert*, 2011 WL 6826121, at *11. For Plaintiff and the Class to prevail at trial, they would have to first obtain class certification. There is always risk in seeking certification of a contested class. While the vast majority of courts that have been presented with the issue have certified similar FACTA classes,[1] not all of them have,[2] and new and unique legal theories could be advanced that could result in denial of a contested certification motion. Even if the Court were to certify a contested class, there is risk inherent in proceeding to trial, where Plaintiff will have the burden of proving that Defendants acted willfully. Proving willfulness against Defendants would have required Class Counsel to put on substantial evidence concerning Defendant's knowledge of FACTA, representations and relationships with credit card vendors and actions taken by Defendant after learning of FACTA. This evidence would have required further discovery and lengthy testimony, including discovery and trial testimony by experts. Finally, even following trial and a successful outcome, the class would wait for post-trial motions and an appeal. This would cause continued uncertainty for the class until the proceedings completed. The settlement resolves the dispute now, once and for all, without additional litigation and the risk of loss by the class. Therefore, this factor supports final approval.

---

[1] *See, e.g., Hammer v. JP's Southwestern Foods, L.L.C.*, 267 F.R.D. 284 (W.D. Mo. 2010); *Beringer v. Standard Parking Corp.*, Nos. 07-C-5027, 07-C-5119, 2008 WL 4390626 (N.D. Ill. 2008); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 216 (N.D. Ill. 2008); *Reynoso v. South County Concepts*, No. SACV07-373-JVS, 2007 WL 4592119, *4 (C.D. Cal. 2007); *Troy v. Red Lantern Inn, Inc.*, No. 07-C-2418, 2007 WL 4293014 (N.D. Ill. 2007).

[2] *See Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 663 (N.D. Al. 2010); *Najarian v. Charlotte Russe, Inc.*, No. CV 07-00501 RGK (CT), 2007 U.S. Dist. LEXIS 59879 (C.D.Cal. June 12, 2007).

### 5. The risks of establishing damages

If willfulness were proven, each Class Member would be entitled to a damage award between $100 and $1,000 and the possibility of punitive damages. *See* 15 U.S.C.A. § 1681. In order to reach this level of damages, Plaintiff will have to win class certification and establish willfulness at trial. Establishing willfulness would likely require expert testimony. Further, even if this Court were to certify the class and then Plaintiff was able to establish willfulness at trial, there is a question of whether a statutory (and possibly punitive) damage award of such a magnitude (up to $1000 for each transaction in violation of FACTA). *See Beringer v. Standard Parking Corp.*, Nos. 07 C 5027, 07 C 5119, 2008 WL 4390626, at*5 (N.D. Ill. Sept. 24, 2008), (citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d at 954; *Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003)). The settlement provided a certain amount, either $9.60 in the form of a check or $15.00 in transferable voucher to any of the 268,000 potential class members that submitted a valid claim whereas there existed substantial risk that Plaintiff would not have been able to prove willfulness and obtain the statutory damages available under FACTA. Therefore, this factor supports final approval because the settlement avoided the risk in proving damages.

### 6. The risks of maintaining the class action through trial.

The class has been certified for settlement purposes only. If this case were to not settle and the parties continued with litigation, Class Counsel anticipates that Defendant will vigorously contest class certification. The expense, time and uncertainty associated with litigating class certification supports obtaining a settlement now. Moreover, even if certification were granted, on appeal Class Counsel anticipates that Defendant will seek to have the class decertified. *Ebbert*, 2011 WL 6826121, at *12. Considering the risk and time associated with litigating the class certification and the potential for appellate practice concerning decertification

13

arguments, this factor supports final approval of the settlement obtained and provided to the Class.

### 7. The ability of the defendant to withstand a greater judgment

If this case were to proceed through trial and judgment, the potential statutory exposure could range from $100 to $1000 for each of the potential 268,000 Class Members. Therefore the range of potential damages may have been from $26,800,000 $260,800,000 Further, insurance coverage was not available to Defendant. Even a judgment on the low end of that spectrum could have set Defendant into bankruptcy. Moreover, "the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re PaineWebber Litig.,* 171 F.R.D. at 129; *see also In re NASDAQ Litig.,* 187 F.R.D. at 477–78. This is especially true where, as here, the other *Grinnell* factors weigh heavily in favor of settlement approval. *See D'Amato,* 236 F.3d at 86 (no abuse of discretion to approve settlement where, despite defendants' ability to withstand higher judgment, settlement was fair in light of other *Grinnell* factors).Therefore, this factor supports final approval of the settlement because the Defendant is unlikely to have the financial ability to pay a higher statutory judgment within the range discussed above.

### 8. The range of reasonableness of the settlement fund in light of the best possible recovery and the attendants risks of litigation

The settlement agreement provided substantial value to the class. Each class member had the choice of obtaining a $9.60 check or a $15.00 transferable voucher that could have been used in any of Defendant's Retail Locations. This is a direct economic benefit to class members. With an approximate 268,000 class members, the settlement agreement created potential relief in the range of $2,572,800 in direct payments to class members or $4,020,000 in vouchers that could be used by class members or to non-class members. Further, the class obtained injunctive relief.

While a judgment against Defendants could range from $26,800,000 to $268,000,000, and there is a potential that Defendant would litigate more and then settle for a larger amount as the case progresses, Plaintiff anticipated significant litigation challenges during the life of the case, including attacks on class certification and establishing willfulness. Even if a judgment of this size was obtained, Defendants may have challenged the size of any award as a due process violation. *See Beringer v. Standard Parking Corp.,* Nos. 07 C 5027, 07 C 5119, 2008 WL 4390626, at*5 (N.D. Ill. Sept. 24, 2008) (noting that large damage award in FACTA case could violate due process rights); *Hanlon v. Aramark Sports, LLC*, No. 09-465, 2010 WL 374765, at **4-5 (W.D. Pa. Feb. 3, 2010). Moreover, the likelihood of recovering this amount against Defendants and the attendant litigation risks counsel that the obtained settlement is reasonable in light of the best possible recovery and therefore this factor supports final approval.

## CONCLUSION

"The law favors settlements of class actions no less than of other cases." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y.1992) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982).); *see also* Newberg, *Class Actions* § 11.41 (citing cases). Plaintiff submits that this Settlement is fair, adequate and reasonable and should be finally approved.  Plaintiff respectfully requests an order from this Court granting final approval of the settlement agreement, entry of final judgment and dismissal and, for the reasons set forth in a separate filing, payment of attorneys' fees, costs and class representative fee.

Dated: New York, New York – January 27, 2015

SPENCER FANE BRITT & BROWNE LLP

/s/ Joshua C. Dickinson
Joshua C. Dickinson (admitted *pro hac vice*)
Bryant T. Lamer (admitted *pro hac vice*)
1000 Walnut Street, Suite 1400
Kansas City, MO 64105
816-474-8100
Fax: 816-4743216
jdickinson@spencerfane.com
blamer@spencerfane.com

THE LAW OFFICES OF SHIMSHON WEXLER, PC
Shimshon Wexler
216 W. 104th Street, # 129
New York, NY 10025
212-760-2400
shimshonwexler@yahoo.com

HERZFELD & RUBIN PC
Michael R. Rudick
Howard L. Wexler
125 Broad Street
New York, NY 10004
212-471-8500
Fax: 212-232-6633
mrudick@herzfeld-rubin.com
hwexler@herzfeld-rubin.com

*Attorneys for Plaintiff Yehuda Katz*

## CERTIFICATE OF SERVICE

This will certify that the foregoing pleading was filed this 27th day of January, 2015, via the Court's CM/ECF filing system which will in turn serve all counsel of record.

/s/ Joshua C. Dickinson
Attorney for Plaintiff