UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                          :
YEHUDA KATZ,                             :
Individually and on behalf of a class,     :        Case No. 12 Civ. 4173 (ENV)(RER)
                                          :
                  Plaintiff,       :
                                          :
              -against-         :
                                          :
ABP CORPORATION,              :
                                          :
                  Defendant.     :
----------------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE INCENTIVE FEE

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Beckman v. KeyBank, N.A.*,
   293 F ....................................................................................................................3

*Childs v. Unified Life Ins. Co.*,
   No. 10–CV–23–PJC, 2011 WL 6016486 (N.D. Okla. 2011) ..................................10

*Cohen v. Apache Corp.*,
   No. 89 Civ. 0076(PNL), 1993 WL 126560 (S.D.N.Y. Apr.21, 1993)......................9

*Duchene v. Michael Cetta, Inc.*,
   No. 06 Civ. 4576(PAC)(GWG), 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ....................9

*Dupler v. Costco*,
   705 F.Supp.2d 231 (E.D.N.Y. 2010) ............................................................6, 7, 14

*Ebbert v. Nassau County*,
   2011 WL 6826121 (E.D.N.Y. 2011).......................................................................7

*Ersler v. Toshiba Am., Inc.*,
   No. CV–07–2304, 2009 WL 454354 (E.D.N.Y. Feb.24, 2009) ................................6

*Fish v. St. Cloud State Univ.*,
   295 F.3d 849 (8th Cir. 2002) .................................................................................10

*Goldberger v. Integrated Res. Inc.*,
   209 F.3d 43 (2d Cir.2000)..................................................................................9, 14

*Gross v. Washington Mut. Bank, F.A.*,
   No. 02 CV 4135(RML), 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006)......................11

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983).............................................................................................13

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06 CV 1825(NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ................10

*In re Lloyd's Am. Trust Fund Litig.*,
   96 Civ. 1262, 2002 U.S Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ................12

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec.23, 2009)....................10

*In re Nissan Radiator/Transmission Cooler Litig.*,
   No. 10 CV 7493 VB, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ......................14

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  No. 06 Civ. 5173(RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ....................................6

*In Re Telik*,
  576 F.Supp.2d 570 (S.D.N.Y) ...............................................................................................11

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) ....................................................................................................8

*McBean v. City of N.Y.*,
  233 F.R.D. 377 (S.D.N.Y.2006) ......................................................................................6, 7, 8

*Nienaber v. Citibank (South Dakota) N.A.*,
  No. 04-4054, 2007 WL 2003761 (D.S.D. 2007) ..................................................................10

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
  08 Civ. 7670(BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ....................................3

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
  No. 11 Civ. 520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ..............................................12

*Roberts v. Texaco, Inc.*,
  979 F.Supp. 185 (S.D.N.Y.1997) ...........................................................................................3

*Stefaniak v. HSBC Bank USA, N.A.*,
  No. 05 Civ. 720S, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) ..........................................9

*Steinberg v. Nationwide Mut. Ins. Co.*,
  612 F.Supp.2d 219 (E.D.N.Y.2009) .......................................................................................6

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ..............................................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir.2005) .....................................................................................................11

*Wheeler v. Missouri Highway & Transp. Com'n*,
  348 F.3d 744 (8th Cir. 2003) ................................................................................................10

*Willix v. Healthfirst, Inc.*,
  2011 WL 754862 .....................................................................................................................9

**STATUTES**

15 U.S.C.A. § 1681o ...................................................................................................................15

FACTA .............................................................................................................................. passim

Fair and Accurate Credit Transactions Act..................................................................................1

OP 984938.3

FLSA ...................................................................................................................................9

**OTHER AUTHORITIES**

Fed.R.Civ.P. 23(h) ...............................................................................................................5

(http://www.nytimes.com/2015/01/12/us/politics/obama-to-call-for-laws-
covering-data-hacking-and-student-privacy.html)......................................................4

http://www.usatoday.com/story/tech/2014/09/24/data-breach-companies-
60/16106197/ .............................................................................................................4

R.D. 467 ...............................................................................................................................3

OP 984938.3

## TABLE OF CONTENTS

**Page Nos.**

TABLE OF AUTHORITIES ............................................................................... i

I.      BACKGROUND ....................................................................................1

II.     THE SETTLEMENT AND FINAL APPROVAL ................................1

III.    LEGAL  ANALYSIS ...............................................................................2

        A.      The Incentive Fee is Reasonable.............................................2

        B.      Plaintiff's Success  in this Action Entitles  Class Counsel to  the
                Unopposed Request for Fees and Costs....................................3

        C.      Established Precedent Provides that Negotiated Attorneys' Fees Paid
                Separately From Class Relief Is Presumptively Reasonable ...................5

        D.      A "Common Fund Analysis" Further Supports the Reasonableness of the
                Fees Herein ...............................................................8

        E.      A Lodestar Plus Multiplier Analysis Also  Supports that  the  Fee
                Requested is Reasonable ...............................................10

                1.      Hourly Rates................................................12

                2.      Hours Expended .........................................13

                3.      Costs .............................................................13

                4.      Lodestar Summary.......................................13

        F.      The *Goldberger* Factors Further Support Granting the Fees and Costs ...............14

V.      CONCLUSION .......................................................................15

OP 984938.3

## INTRODUCTION

Plaintiff Yehuda Katz ("Plaintiff") hereby respectfully requests an Order from this Court approving his request for attorneys' fees and costs and class representative incentive fee in the above-captioned action.  Plaintiff successfully settled this Fair and Accurate Credit Transactions Act ("FACTA") lawsuit on a class-wide basis that included both equitable relief -- forcing Defendant to comply with FACTA's common-sense truncation requirement in all of their retail operations -- and created an opportunity to get free products at Defendant's locations or cash for nearly three hundred thousand class members.  Plaintiff requests an award of attorneys' fees and reimbursable expenses in the amount of $375,000.00, such amount to be paid directly by the Defendant as agreed to in the parties arm's length negotiations.  This request is consistent with the necessary and demonstrable work performed herein to achieve the successful result in settling this class action lawsuit.  In addition, Plaintiff requests an incentive fee award for his services as a class representative in the amount of $2,000.  In support of his Unopposed Motion for Approval of Attorneys' Fees and Expenses and Class Representative Incentive Fee, Plaintiff states as follows:

## I.      BACKGROUND

For sake of efficiency, Plaintiff hereby incorporates by reference his Memorandum in Support of Unopposed Motion for Final Approval of Settlement and Entry of Final Judgment and Order of Dismissal filed concurrently herewith.

## II.     THE SETTLEMENT AND FINAL APPROVAL

The essential terms of the Settlement are set forth in the Settlement Agreement, which was preliminary approved by the Court on October, 3, 2014.  (Dkt. 52.)  In particular, as set forth in the Plaintiff's Memorandum, Defendant agreed to provide each Settlement Class Member with either a $9.60 cash payment or a $15.00 transferable voucher toward the purchase of any

OP 984938.3

item for sale at any of the Settling Defendant's Retail Locations (Dkt. 45 at 3.)  Notice of the Settlement was provided to the Settlement Class Members, which provided a time-line for requests for exclusion and objections to the Settlement.  (Dkt. 45 at 24.; Dkt, 54, 55, 56.) All mandates and instructions from the Court's October 3, 2014 Order have now been satisfied by the Parties, and the case is ripe for final resolution.  The Court previously found that the parties placed evidence in the record demonstrating that the Settlement provided reasonable value for the class members.  In conjunction with the issuances of final judgment herein, Plaintiff requests that he be awarded a reasonable incentive fee and that his counsel be awarded reasonable fees and costs as set forth below.

## III.   LEGAL  ANALYSIS

Plaintiff requests an incentive fee of $2,000.  Such amount is fair and reasonable under the circumstances of this case.  In addition, Plaintiff's Counsel requests an award of attorneys' fees and reimbursable expenses in the amount of $375,000.00.  Plaintiff's success in this FACTA action entitles class counsel to the requested attorneys' fees and costs.  Both of these amounts were negotiated with Defendant separate and apart from any class relief, and these funds will be paid directly from Defendant without diminution of any available relief available to the class. Established Circuit precedent strongly suggests that these negotiated incentive and attorneys' fees be awarded.  The reasonableness of the attorneys' fee award is further bolstered by analysis of "common fund" class action case law in this jurisdiction, as well as review of Plaintiff's lodestar.  Finally, the fee request meets the established *Goldberg* factors.

### A.    *The Incentive Fee is Reasonable*

Providing incentive fee awards to class representatives is common.  These individuals take on the burden and responsibility representing the class through the litigation process, and awarding a modest cash payment to such individuals is, in turn, justified.  Here, the Defendant

2

has agreed to pay Mr. Katz a fee of $2,000. This is a reasonable amount under the circumstances, and the Court should not hesitate to order payment of the agreed fee.

Service awards, also called enhancement or incentive awards, are common in class actions. *Beckman v. KeyBank, N.A.,* 293 F .R.D. 467 at 483 (S.D.N.Y. Apr. 29, 2013). They "serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts." *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960 at *1 (S.D.N.Y. Feb. 9, 2010) (Francis, M.J.). In approving service awards, a court should consider the existence of special circumstances, including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by the plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery. *Roberts v. Texaco, Inc*., 979 F.Supp. 185, 200 (S.D.N.Y.1997) (Brieant, D.J.).

Here, the Plaintiff initiated this action, expended time and energy assisting class counsel, regularly communicated with class counsel, reviewed and explained relevant and necessary information, and assumed the risks of time loss and the possible diminution of individual claims by proceeding. Under such circumstances, a modest incentive fee should be ordered.

### B.   Plaintiff's Success in this Action Entitles Class Counsel to the Unopposed Request for Fees and Costs

Plaintiff was successful in creating substantial value available to the Settlement Class. Specifically, as a result of this litigation, Defendant is now in compliance with FACTA at each of their business locations. Prior to the filing of this lawsuit, Defendant was in open violation of a fundamental fraud protection statute by including more private consumer information on its retail credit card receipts than was permissible under federal law. As advanced in the pleadings

3

and elsewhere in this matter, the stated purpose of Congress in passing the "truncation requirement" was to prevent identity theft from criminals who seek to steal someone's identity through use of information on credit card receipts. The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing billions of dollars per year. As such, ensuring compliance with this longstanding federal statute provided a benefit to Defendant's hundreds of thousands of customers by reducing the risk that they will be the subject to identity fraud in the future.

Data security, credit card theft, and identity theft are not new, but they are a burgeoning problem. As recent data breaches at popular retailers such as Target, Home Depot, and Sony, among others have demonstrated, consumers' data security is increasingly under attack. A recent report suggested that 43% of all companies have experienced some form of data breach in the past year. http://www.usatoday.com/story/tech/2014/09/24/data-breach-companies-60/16106197/. Congress sought to address this troubling issue over a decade ago by passing FACTA and attempting to clog at least one method of identity theft – stolen information from a credit card sales receipt. Under FACTA, the burdens on businesses were featherweight, the benefits to the consumers were obvious, and non-compliance with the Act (at this late date) is unacceptable.

In fact, new regulations appear on the way to assist in protecting privacy and financial information. While many states have their own data breach notification statutes, there are very few federal privacy statutes that assist in protecting consumer information, which includes FACTA. As a result, the President recently proposed new regulations that would require notice of data breach within 30 days of the date upon which a company first becomes aware that security information has been stolen. (http://www.nytimes.com/2015/01/12/us/politics/obama-to-

4

call-for-laws-covering-data-hacking-and-student-privacy.html). By the success achieved in this lawsuit, Plaintiff and his counsel have ensured that Defendant will protect their customers from the type of data theft risk meant to be stamped out by FACTA.

Additionally, Plaintiff's Counsel made available a total maximum monetary value for the approximately 268,000 Settlement Class Members of between $2,572,800 and $4,020,000, depending upon which claims option the Class Member selected ($9.60 cash or $15 transferrable voucher for store purchase). The tangible benefits available to each class member were accessible, appreciable, and reasonable under the circumstances.

Moreover, had Plaintiff not accepted this settlement and instead proceeded to trial, there existed a material risk that Class Members would have recovered less, or perhaps nothing at all. Indeed, the risk to the class was two-fold. First, Defendant advanced several colorable defenses that, if accepted by the Court, could have resulted in no class benefits at all. Second, given the size of the class and available statutory damages, a judgment on the merits may have driven Defendant into bankruptcy protection, again divesting class members of any opportunity for relief. Thus, the decision to obtain the class relief scrutinized and preliminarily approved by the Court was a wise decision and created the most reasonable value proposition for the class under the circumstances of this case. As such, Plaintiff's attorneys' fees and advanced expense request of $375,000.00 should be approved.

C.   **Established Precedent Provides that Negotiated Attorneys' Fees Paid Separately From Class Relief Is Presumptively Reasonable**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h). Plaintiff contends that in this case reasonable attorney's fees should be awarded both based on law and the parties' agreement. Notwithstanding the Defendant's consent to the award of fees, the Court

OP 984938.3

must assess the reasonableness of the award when considering whether the settlement is fair. *See Ersler v. Toshiba Am., Inc.,* No. CV–07–2304, 2009 WL 454354, at *7 (E.D.N.Y. Feb.24, 2009); *Dupler v. Costco*, 705 F.Supp.2d 231, 244 (E.D.N.Y. 2010).  Fairness determinations are trusted to the discretion of the court.

In determining whether the agreed amount of attorney's fees and costs are reasonable, Courts in this District and sister districts in this circuit first focus on the structure of the settlement, and specifically whether the award of attorneys' fees will reduce the relief available to the class. *Dupler*, 705 F.Supp.2d at 243 (noting this as a "threshold matter"); *Steinberg v. Nationwide Mut. Ins. Co.,* 612 F.Supp.2d 219, 224 (E.D.N.Y.2009) ("[T]he Court notes with approval that the fee award will not be drawn from the common fund but will be paid directly by [defendant]. In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members."); *In re Sony SXRD Rear Projection Television Class Action Litig.,* No. 06 Civ. 5173(RPP), 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) ("[R]egardless of the size of the fee award, class members who apply for recovery under the terms of the Settlement will receive the same benefit; the fee award does not reduce the recovery to the class.").

Indeed, the Court in *McBean v. City of N.Y.,* 233 F.R.D. 377, 392 (S.D.N.Y.2006) examined attorney fee protocol under a class motion bearing remarkable resemblance to the structure of the class settlement in this case.  The court noted that the attorneys' fees received by class counsel in the case "w[ould] not be awarded from a 'common fund' created for the class as a whole."  *Id.* at 392.  The court went on to hold:

> This case is therefore different from other class action settlements, where the incentives of the class members and the attorneys diverge on the issue of attorneys' fees. If money paid to the attorneys comes from a common fund, and is therefore money taken from the class, then the Court must carefully review the

OP 984938.3

award to protect the interests of the absent class members. (internal citations omitted). If, however, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.

*Id.* Also emphasized by the Court was the significance of arm's length negotiations in coming to the agreed attorney fees, as well as the presence of a third-party neutral in aiding the parties' settlement. *Id.* at 393.

Likewise, in *Ebbert v. Nassau County*, 2011 WL 6826121 (E.D.N.Y. 2011), this Court held:

Defendants have agreed to pay this amount pursuant to the terms of the Settlement. Therefore, at the outset, the Court notes that the requested attorneys' fees in this case will not be drawn from a common fund, but rather will be paid directly by the Defendants. Consequently, whatever attorneys' fees are awarded will not reduce or diminish the benefit to the class under the terms of the Settlement, which the Court has already found to be fair, reasonable and adequate. Where the attorneys' fees are to be paid directly by the Defendants and, therefore, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members. (internal citations omitted)

*Id.* at *14.

Finally, Courts in this District have emphasized the timing of the negotiations as germane to the ultimate determination of reasonableness. *Id.* at 16. If, as here, the attorneys' fees were negotiated after all class relief was principally finalized, a strong presumption of reasonableness of the negotiated amount exists. *Dupler*, 705 F.Supp 2d page 244. ("Likewise, the fact that counsel did not negotiate the issue of attorneys' fees until after resolving the appropriate settlement fund for the class also weighs in favor of the reasonableness of the fees.").

Here, the Plaintiff's fee request bears all the hallmarks of fee awards that have been approved of in this District and others under similar circumstances. First, the parties ultimately reached settlement through a mediation process and with the assistance of a respected local

OP 984938.3

mediator, Roger M. Deitz.   The amount of class relief was first negotiated and principally finalized before any negotiations occurred regarding attorneys' fees and costs.   The structure of the parties' Agreement provides that class relief is not connected to, nor diminished by, the attorneys' fees awarded.   The same relief is available to the Class Members regardless of the amount of attorneys' fees awarded by this Court because Defendant has agreed to pay Plaintiff's counsel directly, without resort to any funds available to Class Members.   Under these facts, established precedent in this District heavily suggests that the parties' agreed attorney's fees and costs of $375,000 should be awarded.

### D.   A "Common Fund Analysis" Further Supports the Reasonableness of the Fees Herein

The "percentage of the benefit" approach or "common fund", permits an award of attorney fees that is equal to some fraction of the common fund that counsel were successful in gathering during the course of the litigation in issue." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996).   Here, the recovery available to the class in this case is not a true "common fund" in that a cash pool was not established by the Defendant from which Plaintiff, Plaintiff's Counsel, and the Class would be compensated.   That said, the creation of available funds for the entire Class in the form of cash or in-store credit bears reasonable resemblance to a common fund case such that a review of case law related to such cases may be instructive to further bolster the reasonableness of the fees sought herein.   Courts in this District have supported cross-checking the reasonableness of negotiated fees sought in similarly structured cases by resort to the common fund methodology.   *See McBean*, 233 F.R.D. at 393 ("[W]hile this is not a common fund case, the fact that the award here is lower than many awards actually taken from a common fund, at the expense of absent class members, is further evidence of its reasonableness.") (approving attorneys' fees equal to 18% of the amount received by the class).

OP 984938.3

Courts in this District, including Magistrate Reyes, have recently held that using the "percentage-of-recovery" method, is consistent with the "trend in this Circuit" for common fund cases. *Willix v. Healthfirst, Inc.*, 2011 WL 754862.  In cases where a common fund is created by plaintiff's counsel, the Court held: "Class Counsel's request for 33 1/3% of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'" *Id.* at 6 *(citing Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar.24, 2008)); *see also Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576(PAC)(GWG), 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL tip misappropriation case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund); *Cohen v. Apache Corp*., No. 89 Civ. 0076(PNL), 1993 WL 126560, at *1 (S.D.N.Y. Apr.21, 1993) (awarding 33 1/3% of the $6.75 million fund).

The rationale for such fee awards are several, but Judge Reyes noted as supporting grounds, that "Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation." *Willix* at 7.  Moreover, "where relatively small claims can only be prosecuted through aggregate litigation, 'private attorneys general' play an important role." *Id* at 6.  *citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).  Attorneys who fill this private attorney general role must be adequately compensated for their efforts to encourage the prosecution of such claims deemed to be in the public interest. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir.2000) (noting the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").

9

OP 984938.3

Here, and as noted above, the total value of cash and in-store credit Plaintiff's counsel made available to the Class through their efforts ranges between $2,572,800 and $4,020,000. Given the routinely accepted common fund apportionment of 33% of the value achieved for the Class, an award of between $857,600 and $1,440,000 would be routinely accepted as reasonable in this District if this were a true common fund case.  In this Motion, Plaintiff's counsel seeks less than half this amount as part of their agreed to fees and costs herein – further evidence that the request is reasonable and should be granted by the Court.

> **E.     A Lodestar Plus Multiplier Analysis Also Supports that the Fee Requested is Reasonable**

 "Under the 'lodestar' approach, the hours expended by counsel are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount, and this amount may be adjusted up or down to reflect the individualized characteristics of a particular action." *Nienaber v. Citibank (South Dakota) N.A.*, No. 04-4054, 2007 WL 2003761, *2 (D.S.D. 2007) (*citing H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 259-60 (8th Cir. 1991)); *In re Marsh & McLennan Cos., Inc. Sec. Litig.,* No. 04 Civ. 8144(CM), 2009 WL 5178546, at *20 (S.D.N.Y. Dec.23, 2009).  The starting point in determining attorney fees by the lodestar method is to multiply the number of hours reasonably expended by the reasonable hourly rates.  *Wheeler v. Missouri Highway & Transp. Com'n*, 348 F.3d 744 (8th Cir. 2003); *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

However, class counsel's willingness to prosecute this matter on a risk-based contingent basis allows the Court to also consider the ultimate equitable and monetary results class counsel achieved.  *In re Comverse Tech., Inc. Sec. Litig.*, No. 06 CV 1825(NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) (multiplier of 2.78 was "well within the range awarded in comparable settlements."); *Childs v. Unified Life Ins. Co.*, No. 10–CV–23–PJC, 2011 WL

OP 984938.3

6016486, *15 n.10 (N.D. Okla. 2011) (citing *In re Harrah's Entm't*, No. CIV. A. 95–3925, 1998 WL 832574, at *5 (E.D. La. 1998) ("To overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services.")).

As such, several courts in this District have noted disfavor with applying a rigid lodestar approach in a contingency case wherein plaintiff's counsel took on substantial risk to pursue the case on behalf of the class.  "The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir.2005).  By contrast, the lodestar method as characterized by the Second Circuit "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line item fee audits." *Id.*

As such, it is typical in a risk-based, contingent fee case to employ a multiplier.  "[A] lodestar multiplier aims to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Gross v. Washington Mut. Bank, F.A.*, No. 02 CV 4135(RML), 2006 WL 318814, at *6 (E.D.N.Y. Feb. 9, 2006).  "Courts apply a multiplier to the lodestar calculation for any number of reasons, e.g., to reflect the risk of nonrecovery; to act as an incentive for the bringing of socially beneficial litigation; or to reward counsel for an exceptional result." *Id.*

Indeed, in *In Re Telik*, 576 F.Supp.2d 570, 590 (S.D.N.Y), the court held:

> Courts have continually recognized that, in instances where a lodestar analysis is employed to calculate attorneys' fees or used as a "cross check" for a percentage of recovery analysis, counsel may be entitled to a "multiplier" of their lodestar rate to compensate them for the risk they assumed, the quality of their work and the result achieved for the class. . . .  In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court. *See, e.g., Maley*, 186

OP 984938.3

F.Supp.2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within range awarded by courts in this Circuit and courts throughout the country");

Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663, at **78-79 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley*, 186 F. Supp. 2d at 371 (the "modest multiplier of 4.65 is fair and reasonable"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar).

Here, counsel seeks nowhere near such multiplier. Plaintiff's counsel's lodestar is $298,860.50 in fees. When coupled with a modest multiplier of approximately 1.25, this lodestar analysis further confirms that the $375,000 agreed attorney fee is reasonable.

### 1.   Hourly Rates

Class Counsel's hourly rates in this matter for attorneys have ranged from $190.00 to $550.00, and hourly rates for non-attorney staff ranged from $80 to $110.00.  As set forth in the Declarations (Dickinson, H. Wexler, and S. Wexler, attached to the Declaration of Joshua C. Dickinson as Exhibits A, B, and C, and being filed contemporaneously herewith) from billing counsel, such rates are reasonable in this market for experienced, complex class action representation.  Indeed, this case required significant class action experience to navigate the numerous issues presented, and to consummate the settlement of a process that included nearly three hundred thousand plaintiffs.

12

2.     Hours Expended

Undersigned counsel reviewed all billed time to this matter before this submission to the Court.   There is no time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary."   *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  All the time submitted was reasonably necessary to achieve the successful outcome for the Plaintiff and the Class.   Although a number of different billing attorneys appear in the detailed invoices attached hereto, this is a reflection of the fact that several attorneys working on this case left employment with the underlying law firms during the course of the lawsuit, and were replaced on the file by other counsel.   The work performed by these various counsel were not redundant.

3.     Costs

Class Counsel has incurred $18,390.40 in expenses to date in the prosecution of this matter.   Among other things, these costs include filing fees, copying charges, charges for computerized legal research, and mediator charges.   All of the costs were advanced by Counsel and were necessarily incurred.   Plaintiff should be awarded the unreimbursed costs in full.

4.     Lodestar Summary

As set forth in the three Declarations attached hereto, the total lodestar calculation herein is $298.860.50.  This amount is roughly 80% of the requested fees and costs.   Meaning, a simple multiplier of roughly 1.25 would meet the negotiated cap on fees and costs.   As discussed above, such multipliers, and indeed much higher multipliers, have been readily approved for complex class action cases in this District.   Again, when cross-checked with this award method, the fees and costs sought herein should be determined reasonable and approved.

13

**F.      The Goldberger Factors Further Support Granting the Fees and Costs**

Courts in this District also use a six-factor test developed by the Second Circuit in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) to determine the reasonableness of fees.  Those factors include: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy.  *Id.; see also Dupler*, 705 F.Supp.2d at 243 (E.D.N.Y.2010).

As discussed in more detail above and in the concurrently filed Memorandum in Support of Unopposed Motion for Final Approval of Settlement and Entry of Final Judgment and Order of Dismissal, these factors are met.  Briefly:

1.  Counsel's time and labor are discussed in Section E immediately above.

2.  The fees sought herein were part of a complex class action settlement involving the rights of an estimated 268,000 class members.  The lawsuit involved a federal consumer privacy statute which, due to wide-scale compliance, generates little litigation.  As such, few firms have knowledge or experience prosecuting these types of claims.

3.  Counsel took on substantial risk in filing this suit with no guarantee of payment unless achieved through settlement or trial victory.

4.  Counsel asserts that the record demonstrates success on the merits and a reasonable settlement given the risks presented in the case.

5.  The fees bear a reasonable relationship to the work performed to achieve the successful result on behalf of the class, especially when considering that the fees will be paid separately by the Defendant and will not erode class relief available.

6.  Public policy generally favors the award of reasonable attorneys' fees in class action settlements, especially where, as here, class members would be unlikely to pursue a case individually given that the costs substantially outweigh any potential recovery. *In re Nissan Radiator/Transmission Cooler Litig.,* No. 10 CV 7493 VB, 2013 WL 4080946, at * 17 (S.D.N.Y. May 30, 2013) ("Public policy favors reasonable attorney fee awards to encourage attorneys to prosecute merit-based class actions on a contingent fee basis.")

For the foregoing reasons, the Court should approve Class Counsel's request for attorneys' fees and costs.

## V.   __CONCLUSION__

Under all the circumstances existing here, Plaintiff's request for fees and costs is reasonable. The Settlement Agreement represents a strong outcome for Plaintiff's claims. First, the Defendant is now in compliance with FACTA at all of their business locations. Additionally, by agreeing to the settlement, Plaintiff assured that each Settlement Class Member could obtain a $9.60 cash payment or a $15.00 transferable voucher toward the purchase of any items for sale at any of the Settling Defendant's Retail Locations. Even assuming that Plaintiff would prevail in a trial on his claims, such a result could certainly yield less against Defendant, or perhaps no recovery at all.[1] The fact that Plaintiff's counsel separately negotiated, through the guidance of a third party neutral, attorneys' fees and costs to be paid from Defendant which will not reduce relief available to the class, bodes in favor of approval of the parties' agreed attorney fees and costs. For the foregoing reasons, Plaintiff Yehuda Katz requests that he be awarded reasonable attorneys' fees and costs in the amount of $375,000.00, plus an incentive fee award to Plaintiff of $2,000.00, that the Court order Defendant to make such payment within 30 days after the Effective Date, as defined in the Parties' Agreement, and grant such other relief as proper.

---

[1] A showing of negligent conduct only entitles a plaintiff to __actual__ damages and attorneys' fees. 15 U.S.C.A. § 1681o. Plaintiff has not pled a cause of action for actual damages, thus any finding of negligent (as opposed to willful) conduct on the part of the Defendant would result in no benefit to the Class.

OP 984938.3

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP

/s/ Joshua C. Dickinson
Joshua C. Dickinson (*jdickinson@spencerfane.com*)
Bryant T. Lamer (*blamer@spencerfane.com* )
1000 Walnut Street, Suite 1400
Kansas City, MO 64105
816-474-8100
Fax:  816-474-3216

THE LAW OFFICES OF SHIMSHON WEXLER, PC
Shimshon Wexler (*shimshonwexler@yahoo.com*)
216 West 104th St., #129New York, NY  10025
212-760-2400
Fax: 917-512-6132

Herzfeld & Rubin, P.C.
Michael R. Rudick (*mrudick@herzfeld-rubin.com*)
Howard Wexler (hwexler@herzfeld-rubin.com)
125 Broad Street
New York, NY 10004
Phone: 212-471-8473

*Attorneys for Plaintiff Yehuda Katz*

TO:

GREENBERG TRAURIG, LLP
Stephen L. Saxl (*saxls@gtlaw.com*)
Roy Taub (*taubr@gtlaw.com*)
MetLife Building
200 Park Avenue
New York, NY  10166
(212) 801-9200
(212) 801-6400 (facsimile)

*Attorneys for Defendant ABP Corporation*

16

OP 984938.3